THE STATE OF IOWA, Appellee, v. GEORGE SIGG, Appellant.

Rape: EVIDENCE: INSTRUCTIONS TO JURY.

*Appeal from Clayton District Court.*—HON. W. A. HOYT, Judge.

SATURDAY, OCTOBER 15, 1892.

INDICTMENT for rape. There was a verdict and judgment for the state, and the defendant appeals.—*Affirmed.*

·*J. Larkin,* for appellant.

*John Y. Stone,* Attorney-General, *J. D. Murphy,* County Attorney, and *Thos. A. Cheshire,* for the State.

GRANGER, J.—I. The indictment charges the defendant with having committed a rape on the person of one Fredericka Putzin, on or about the twenty-fifth day of May, 1891. The conviction was for an assault with intent to commit a rape. It is urged that the testimony is not sufficient to sustain the verdict. The evidence of the prosecuting witness shows substantially the following facts: That in May, 1891, she resided in Garnavillo, Clayton county, Iowa, and worked in the family of William Kregel; that on the twenty-fourth day of May, 1891, she came with her brother from her sister's, at Elkport, and was left by her brother about one-half mile from Kregel's, at about half past eight o'clock in the evening; that, in going to Kregel's, she passed through the village of Garnavillo, and saw the defendant at the hotel; that she was going to the postoffice to mail a letter, but did not mail it, because she saw the defendant was following her, and she was afraid, because he had followed her before; that she turned at Schunacker's, and went directly home; that the defendant followed her from where she saw him nearly to the postoffice; that she saw nothing of him, after she left him near the postoffice, till she reached Kregel's gate, where she found him; and that he seized her, threw her to the ground, tore open her drawers, during which time she, to use her own language, "was in fits." We understand this to mean that she fainted. The testimony of the defendant shows substantially the following facts: That on the Friday evening before Pentecost he was sitting in front of a barber shop in Garnavillo, with one Hill, when the prosecuting witness came along, who was then a stranger to him, and said to him, "Good evening," and that he answered, "Good evening." That he again saw her, about fifteen or twenty minutes after, having followed her, and asked her where she was going; to which she answered that she thought she was going home. He then inquired, "what was the matter" of his going with her, and she said "Nothing at all." That they then went together to Kregel's gate, and he told her to take the mail and a pail she had in, and then come out again; and she said, "No; if she took them in she would have to stay;" and he then said, "We will take them with us." That they passed the house, turned a corner, and went to near Kregel's pig pen, near the next corner, and that he then solicited and had intercourse with her, by her consent, and without any resistance on her part. He also testified that he followed her with a view of having intercourse with her if possible, because he thought she was a sporting woman. That after she passed the postoffice he inquired of those with him who she was, and they did not know. He then went to the hotel and inquired, and she was not known there, and he then followed and found her, with the results as above stated.

There is much in the record to both strengthen and impair these statements by each of them, and they are only stated to indicate, in a

general way, the claims of the parties. It is said, in argument, that the evidence of the assault was "manufactured for the purpose of shielding the prosecutrix from the shame of having voluntarily surrendered her virtue." We do not see how such a conclusion should result from the record, any more than that the defendant, who confesses himself a stranger to virtue, should manufacture the evidence of a voluntary surrender by her to shield himself from the consequences of the crime charged. The motive with him is certainly as great as it is with her, and the statement, as an argument, is in the nature of a two-edged sword, which is to be handled with exceeding care.

From the peculiar condition of the testimony, the jury was forced to the conclusion, upon the testimony of the prosecuting witness, with the corroborating facts, to find that the defendant made the assault with which he stands convicted; or to the conclusion, from the testimony of the defendant, with his corroborating facts, that the prosecuting witness is an abandoned prostitute. No other solution of the case is possible, and none other is claimed.

The confession of the defendant to the actual intercourse, which, if the offense was committed as charged, would furnish the corroboration to sustain the conviction, makes it necessary to maintain his innocence of the assault upon the ruins of her character. The attempt at intercourse by him is admitted. Whether the attempt was in the nature of an assault, or by mere solicitation, is the important question. The jury, in the light of the entire evidence, believed that he made the assault. We cannot notice all, but we will some, of the particular facts commented upon, as against the probabilities in support of the verdict. There was an attempt to impeach the moral character of the prosecuting witness, and it is urged that there was no effort by the state to support it. With the presumption in her favor, it would hardly seem that such an effort was necessary. The testimony against her character was slight, and confined to talk growing out of the affair with the defendant. That affair, because of a dispute as to the facts, had given rise to both favorable and unfavorable comments as to her character. "Some claim it was good and others it was bad." Nothing more serious appears in the evidence.

The testimony of the prosecuting witness is, in some particulars, quite contradictory, and importance is attached to this fact. She is a German girl, and evidently understands and speaks the English language imperfectly. The contradictions are of a character to indicate that she did not comprehend the meaning of the questions or her answers. Taking the testimony together, it is not difficult to understand what she intended to say. It appears that the defendant was at one time before a Mr. Weiter (a justice of the peace) on some charge by her, and at another time before another justice (Mr. Wolf) on the preliminary charge in this case, and she was confused, on cross-examination, by inquiries as to her testimony on the different occasions. The discrepancies are largely to be accounted for because of her not keeping in mind the time referred to by counsel. It was with reference to this that she was recalled for further examination the following day, and the court, when she was called, remarked: "It occurred to me yesterday that the witness might have

misunderstood some of the questions Mr. Larkin put to her." The appellant complains of the remark by the court. We think the remark a proper one. Its effect was to direct the attention of all to the danger of a misunderstanding of questions, and to stimulate caution on the part of counsel, and lead the jury to observe the testimony closely in that particular. Remarks that have such a tendency are not prejudicial.

It is said that, on the trial before Justice Weiter, the prosecuting witness did not state that when she was assaulted, she "had a fit." It is true she did not, but the investigation then was as to another matter, and she says she was not inquired of in that particular. It is also urged that it appears that she did not cause the arrest in this case till the twenty-fifth or twenty-sixth of July, after the occurrence in May. We regret that the record is not more specific or full, but our inference is that near the twenty-fifth or twenty-sixth of July he was arrested for another assault on her, when one Harberg, who saw her, advised defendant's arrest. It is quite likely that, but for what occurred afterwards, no arrest would have been made for the occurrence in May, but such a fact is not conclusive against her statements.

The appellant relies upon the testimony of a Mrs. Thomas, who was a witness for the defendant. She said that one evening about Pentecost, when looking for the cows, she witnessed parties having intercourse near Kregel's pig pen, and that the man was dressed in black; and the defendant says that on the night he was with Miss Putzin he wore a "black Prince Albert." But she does not fix the night definitely, nor does she pretend to know who either of the parties were. Her testimony is too indefinite to be of especial value in support of the defendant's theory. In view of the entire record in the case, we think we should not reverse the case because of the insufficiency of evidence.

While the cross-examination of the prosecuting witness was in progress, she fainted, and the court adjourned, and she was carried out. When she fainted in the court room, her mother, who was there, rushed to her assistance and stood by her. Complaint is made of certain statements by the prosecuting attorney in his address to the jury, not of an unusual character, but such as the appellant calls inflammatory; and it is urged that this, in connection with the fainting by the prosecuting witness, the remarks of the court as to her not understanding the questions, the fainting or her going into a fit when the assault was said to be made, and her being carried out of the court room "in a fit," together with the inflammatory remarks of the attorney, were to the prejudice of the defendant. There is nothing in the record to justify our interference. The district judge was present, and saw what occurred, and, if there was anything to indicate undue prejudice to the defendant, we must believe he would have set aside the verdict, and granted a new trial. It was a matter so much within his discretion that we should not interfere, except where his discretion is abused.

II. The appellant says that the court failed to charge the jury, as it should, that it could not convict the defendant of rape, under the evidence. The defendant denies having intercourse at the time she says it

occurred, the evening of Pentecost, or that it was by force. The prosecuting witness does not testify that there was actual intercourse, but that after the assault she fainted, and she does not know what then occurred. The jury found only an assault with the intent to commit a rape. There was some testimony tending to establish the charge of rape. That it may have been insufficient to justify a verdict for that offense does not make it error for the court to permit the jury to determine the fact under the evidence. The case of *State v. Tweedy*, 11 Iowa, 350, is not against this holding.

III. It is said that, in the fifth instruction, the court charged the jury that if it believed, from the evidence of any witness except that of the prosecutrix, that at or about the time, and at or near the place, stated by her the defendant carnally knew the prosecutrix, it had the right to consider that fact in corroboration of her testimony. The complaint is that the instruction "assumes that the prosecutrix testified that the defendant had intercourse with her, and that some other witness testified to this fact." The prosecutrix did in her testimony at times speak as if the defendant had intercourse with her. This occurred in different ways, but it is likely a fair inference from all her testimony that she referred to the assault. The inference from the instruction is only for the benefit of the defendant, to prevent a conviction on such testimony without corroboration. The instruction manifestly had reference to the testimony of the defendant as to intercourse near the time and place of the alleged assault.

IV. The court did not permit the jury to consider any lower degree of the offense charged than that of an assault and battery, and of this complaint is made. The action of the court is right. While there was evidence of an assault, there was none from which an assault could be found without finding a battery also. If the evidence does not show unlawful violence in the seizure of the person of the prosecutrix, it shows no offense or unlawful act whatever. See *State v. Cole*, 63 Iowa, 695; *State v. Perigo*, 80 Iowa, 37.

The record shows no error, and the judgment is AFFIRMED.