## STATE OF IOWA v. JOHN H. CATER, Appellant.

Evidence: LIMITING. Evidence on the effect of firing a pistol in close contact with and at a person, as to burning the flesh, or burning, or singeing the hair, should not be restricted to the 9 effects, in that respect, from firing the pistol with which the alleged homicide is claimed to have been committed, but may include the effects of firing a pistol of the same caliber.

CROSS-EXAMINATION. The witnesses for defendant may be cross-examined as to statements made by them before the grand jury 2 upon the examination of another charge against defendant, although the minutes of the testimony containing such statements were not returned with the indictment in the case at bar.

*Same.* The counsel for the state may, on the cross-examination of a witness for defendant, use a copy of the minutes of her testimony taken upon the trial of another charge against defendant, for the purpose of showing that she had formerly made statements 8 in conflict with those made upon the trial of the case at bar, and defendant cannot complain because the court did not stop the proceedings and furnish his counsel with a copy of the minutes.

RELEVANCE. The coroner may say that he told the sheriff in the presence of defendant about keeping defendant's shoes, the shoes 6 being in evidence in connection with evidence as to tracks made by defendant.

Instructions: INCLUDED OFFENSES. Code, sections 4465, 4466, providing that on an indictment for an offense consisting of different degrees, the jury may find defendant guilty of a degree 5 inferior to that charged, or of any offense necessarily included in that charge, does not apply where the facts show that defendant is either guilty of the crime charged or is innocent of any offense; hence the court need not charge as to the lower grades of the crime.

PROVINCE OF JURY. An instruction in a murder trial, in which the defense is suicide, "that the drawing of the pistol shows premeditation; the cocking of it and leveling it at a particular vital spot, shows deliberation," and that the conclusion is irresistible that 12 under the law and the undisputed facts in the case, the killing of deceased was an act possessing all the elements of murder in the first degree, and that it was murder in the first degree,—is erroneous, as it is a clear usurpation of the powers and province of the jury.

| | |
|---|---|
| 100 | 501 |
| 101 | 480 |
| 100 | 501 |
| 102 | 656 |
| 102 | 667 |
| 102 | 697 |
| 103 | 12 |
| 103 | 16 |
| 103 | 30 |
| 103 | 724 |
| 100 | 501 |
| 106 | 687 |
| 100 | 501 |
| s109 | 70 |
| 100 | 501 |
| 111 | 245 |
| 100 | 501 |
| 112 | 200 |
| 100 | 501 |
| 113 | 697 |
| 100 | 501 |
| 114 | 545 |
| 100 | 501 |
| 117 | 492 |
| 100 | 501 |
| 118 | 500 |
| 100 | 501 |
| 120 | 247 |
| 100 | 501 |
| 124 | 212 |
| 100 | 501 |
| 139 | 50 |

*Same.* An instruction in a murder trial, in which the defense is suicide, that the defendant sets up no affirmative defense and no matters in extenuation, and relies wholly upon the denial of his guilt, and wholly upon his anticipation of a failure by the state to prove the case against him, is unfair in its phraseology, as it is calculated to impress the jury with the idea that, in the court's opinion, the defendant knows he is guilty, has no defense, but hopes to escape justice by reason of the inability of the state to show his guilt.

SAME. The jury should not be told to "follow your convictions" in determining who is the guilty man.

APPLICABILITY AND CLEARNESS. An instruction in a murder trial defining malice aforethought, and stating that if the killing was accidental, or an excusable or justifiable homicide, or if it was only manslaughter, the party charged with the crime must prove the facts in defense, or if he fails to do so, he must be a murderer, is erroneous where the only defense was suicide; as it is calculated to confuse the jury, and make them believe that the defendant must, in any event, make the proof referred to.

UNDERSCORING PARTS. The underscoring of words in the instructions submitted to the jury in a criminal trial, is improper, as its tendency is to give undue weight and force to the words or sentences underscored, and thereby to prevent the jury from giving the other portions of the charge the weight and consideration which they should have.

**Practice:** NEW TRIAL: *Criminal law.* Newly discovered evidence is not a ground for a new trial in a criminal case, under the Iowa statutes

OBJECTIONS. An objection to a question, not interposed until after the answer, is not available, on appeal.

**Misconduct:** PROOF ON APPEAL. An assignment, on appeal, in a criminal case, that the court erred in not rebuking or denouncing the clapping of hands of the audience, claimed to have followed the conclusion of the argument of one of the counsel for the state, cannot be deemed well taken where the counsel for defendant swear that such act of the audience was not stopped or rebuked by the court or the sheriff, but the sheriff states in his affidavit that he instantly checked the applause, and the clerk swears that both the court and the sheriff immediately stopped the clapping of hands, and the county attorney says that it was at once stopped.

OF COUNSEL IN ARGUMENT. It is not error for the counsel for the state, in his argument to the jury, to state his belief in defendant's guilt.

*Appeal from Winneshiek District Court.—*HON. E. E. COOLEY, Judge.

TUESDAY, JANUARY 19, 1897.

THE defendant is charged with the murder of George Wemett. He was tried, found guilty, and sentenced to be imprisoned for life in the state penitentiary, and appeals.—*Reversed.*

*John B. Kaye* and *J. J. Cameron* for appellant.

*Milton Remley,* attorney general, *E. P. Johnson,* county attorney, and *Jesse A. Miller* for the state.

KINNE, C. J.—I. The court is charged with error in not sustaining the defendant's motion for a new trial on the ground of newly-discovered evidence. Under the statute, newly-discovered evidence is not ground for granting a new trial in a criminal case. *State v. King,* 97 Iowa, 440 (66 N. W. Rep. 735); *State v. Watson,* 81 Iowa, 380 (46 N. W. Rep. 868); *State v. Whitmer,* 77 Iowa, 557 (42 N. W. Rep. 442); *State v. Bowman,* 45 Iowa, 418.

II. Complaint is made of the action of the court in permitting the attorneys for the state, on cross-examination of the defendant's witnesses, the Cater girls, to examine them regarding certain statements made by them before the grand jury. It is urged that the ruling was wrong, because the minutes of the testimony containing such statements were not returned with the indictment in this case. The statements complained of were not made in this case by said witnesses, but were made in the case of the state against this defendant, in which he was charged with the murder of his wife. The testimony,

therefore, could not be with the indictment in this case.   There was no error in the ruling.

III.   It is alleged that counsel for the state, in an argument to the jury, stated his belief in the defendant's guilt, and that is said to be error.   We discover nothing in the record to show that the statement complained of was made, and if it was, it was not error.   *State v. Beasley*, 84 Iowa, 83 (50 N. W. Rep. 570).

IV.   The court is said to have erred in not rebuking or denouncing the clapping of hands of the audience, which is said to have followed the conclusion of the argument of one of the counsel for the state. Counsel for the defendant swear that this act of the audience was not stopped, or rebuked by the court, or the sheriff.   On the other hand, the sheriff states in his affidavit that he instantly checked the clapping of hands.   The clerk swears that both the court and the sheriff immediately stopped the clapping of hands, and the county attorney says it was at once stopped.   In view of this condition of the record, it cannot be said that there was any error.

V.   In the instructions the court told the jury that if the defendant was guilty of any crime he was guilty of murder in the first degree.   He submitted to the jury forms of verdict, accordingly.   No instructions were given touching any lower degree of crime. Counsel refer to the statute, Code, sections 4465, 4466.   These sections provide that upon an indictment for an offense consisting of different degrees, the jury may find the defendant not guilty of the degree charged, and guilty of any degree inferior thereto, and that the defendant may be found guilty of any offense the commission of which is necessarily included in that charged in the indictment.   But we have repeatedly held that the statute has no application

when the facts show that the defendant is either guilty of the crime charged or not guilty, and that in such a case it is not incumbent upon the court to charge as to the lower grades of crime. *State v. Cole,* 63 Iowa, 695 (17 N. W. Rep. 183); *State v. Froelick,* 70 Iowa, 213 (30 N. W. Rep. 487); *State v. Casford,* 76 Iowa, 330 (41 N. W. Rep. 32); *State v. Munchrath,* 78 Iowa, 268 (43 N. W. Rep. 211); *State v. Perigo,* 80 Iowa, 37 (45 N. W. Rep. 399); *State v. Sterrett,* 80 Iowa, 609 (45 N. W. Rep. 401); *State v. Sigg,* 86 Iowa, 746 (53 N. W. Rep. 261). It is manifest that in this case, if the defendant is guilty, it is of the crime of murder in the first degree.

VI. Coroner Gibson testified for the state touching a conversation had with the sheriff, in the presence of the defendant, relating to what was said to the sheriff as to keeping the defendant's shoes, and as to who had since retained possession of the shoes. There was no error in this. The shoes were introduced in evidence in connection with evidence relating to the tracks.

VII. Certain evidence of Dr. Emmons, to the effect that Wemett did not have a coat on when he and the doctor were together the evening prior to the killing, is complained of as not proper cross-examination. The record shows that no objection was made to the question when asked. The objection was made after the question had been answered. The defendant could not sit by and permit this evidence to be given without objection, and then, if he deemed it unfavorable to him, interpose an objection. *State v. Moore,* 25 Iowa, 128; *State v. Benge,* 61 Iowa, 658 (17 N. W. Rep. 100).

VIII. It appears that the counsel for the state, on the cross-examination of Lizzie Cater, used a copy of minutes of her testimony taken in the case of the state against her father, in which he was charged with

the murder of her mother, for the purpose of showing that she had formerly made statements in conflict with those made by her upon the trial of this case. We see no proper objection to such use of the minutes. It was proper to show that she had made statements at another time and place different from what she was then testifying to, and the minutes could be used for that purpose. No attempt was made to introduce them in evidence. Nor can the defendant complain that the court did not stop the proceedings, and furnish the defendant's counsel with a copy of said minutes.

IX. Another assignment of error we deem it necessary to discuss is as to the court's ruling excluding the testimony of Dr. Roome, with reference to the fact that a pistol fired in close contact with a person, and at him, might not burn the flesh, or burn or singe the hair. The objection of the state to the questions was not that the doctor was not shown to be competent to give such an opinion as was asked for. The objection, which was sustained, was that the evidence was immaterial, incompetent, and irrelevant, unless it was shown that it was the same weapon that was found by the body of the deceased in this case. If it had been objected to because the weapon asked about was not shown to have been of the same caliber, it might have been good. But to limit the inquiry to the particular revolver found by the side of the deceased, was clearly error. The attempt of the defense was to show that Wemett came to his death by a shot from his own hand, and it was proper to show the effect of a revolver shot upon a person, as to burning the flesh, or hair, when fired by one holding it a short distance from the body hit. We do not hold that the doctor had been shown competent to give an opinion. No such objection was made, and as

to the objection in fact made, the ruling was errone-
ous.

X.   Before considering the objections addressed
to other instructions given, and the alleged error in
refusing to give instructions asked, we must set out as
briefly as may be the more important facts as to the
killing of Wemett, as to which there was evidence
introduced upon the trial.   Burr Oak, is a small vil-
lage in Winneshiek county, and is situated about thir-
teen miles from the county seat.   The defendant lived
in the village, owned and operated a butcher shop and
meat market, and peddled meat in the country sur-
rounding the village.   George Wemett had been in the
employ of the defendant in his business until a week
or two prior to September 1, 1894.   After he had
ceased to work regularly for the defendant, he kept
his clothes at the defendant's house, but did not board
there.   He also assisted the defendant occasionally
after his regular employment had ceased.   Wemett
was about twenty-six years old, weighed one hundred
and eighty pounds, was in good health, generally of
cheerful disposition, not quarrelsome, and not known
to have any enemies.   He used alcohol and other
intoxicants, more or less, as a beverage; often carried
a bottle of it in his pocket; was considerable of a
coward, and usually carried a revolver.   He had for a
time prior to his death been keeping company with a
daughter of the defendant, which association was
objectionable to the defendant, because of Wemett's
habits as to the use of liquor.   Defendant's wife seems
to have stood by the daughter, and it also appears,
that because thereof, and because of the attempt of
the defendant to dispose of some property, he had had
some trouble with his wife.   Wemett was found
dead near the schoolhouse on the morning of
the second of September.   There was a bullet
hole in his head behind his ear, a revolver lying by

him, and a bottle of alcohol in his hip pocket. The evening before, Dr. Emmons called at the defendant's house for Wemett, and he rode three miles or over in the country with him. They both returned to the village, and to the doctor's place, at about 8 o'clock, and Wemett helped unhitch the team, and run the buggy in the barn. Wemett then left. He had not been drinking. He was seen to go from the doctor's place towards the post-office, and shortly after was in a store with the defendant. About half past 8 o'clock he was seen outside of and near the same store. He then had no coat on, had not been drinking, and did not appear to have any bottle of liquor or revolver about his person. Soon after, he made inquiry of a man for the defendant, wanted to know where he was, and this was the last seen of him until his dead body was found the next morning. The defendant was seen the same evening at a store at 8 o'clock, and again at about half past 8 o'clock. At about fifteen or twenty minutes to 9 o'clock he was seen walking in the direction of the schoolhouse. It was about forty rods from the point where the defendant was last seen walking towards the schoolhouse, to the place where the body of Wemett was found. It appears also that the defendant was looking for Wemett after the latter returned to the village with Dr. Emmons. At about fiteen minutes after the defendant was seen going towards the schoolhouse, several witnesses testify that they heard a shot in the direction of the schoolhouse. About half past 9 o'clock the defendant was in a store, and was still inquiring for Wemett. When asked if anything was the matter he said that his wife and Wemett had gone to one Landon's. About 9:30 P. M. he went to a store, and purchased a melon, and went home. When he arrived at home, his wife was gone, and he wanted his daughter to call her, and look for her, which she did, without avail,

At his request the daughter went to the barn, to see if the horses and buggy were there. He went to see if Emmons' horse and buggy were home. He saw the doctor, and told him he had been having some trouble with his wife about the sale of some property. Afterwards he was at the store, and asked if anyone had seen Wemett, whereupon one Briggs, not knowing that Wemett was then dead, jokingly said, "George Wemett died a half hour ago." The defendant dropped his hands, and turned out of the light, and called one Ward out of the store. He told Ward his wife and Wemett "had skipped out;" that his wife was mad about his selling a part of a lot to one Manning, and that she said she was going to see Landon about it, and he believed she and Wemett had gone there. Defendant then went to the home of Joe Wemett, and told him the story of his wife's going off with George Wemett. Later on defendant and several others made a search of defendant's barn. About half past twelve that same night defendant came out from under the trees near his house. There was no light in the house. The next morning about 6 o'clock the defendant called his daughter. She asked if he had seen anything of her mother and Wemett, and defendant said "No," and he was going to Wemett's to see if they were there. Before starting, he handed his keys to the daughter, and asked her to feed the horse. The daughter and her sister opened the barn door, and saw the feet of their mother sticking out from under some hay. She had been killed by some one. When told by his daughter that the mother was in the barn, under some hay, he said, " Is she?" He got a man to go to the barn with him. There lay the dead body of his wife, covered with blood, and an ax was lying near the body. He admitted that he had trouble with his wife. He then said that he believed that Wemett had killed his wife. This was before Wemett's body had

been discovered. When the fact that Wemett's dead body had been found was communicated to him, he said nothing, and exhibited no feeling. Blood spots were found near Wemett's body; also some blood a short distance from the body. Some of the evidence tended to show that death was instantaneous. Tracks were found in the dust and dirt, which led to the place where the body was found. It appeared that they were made by two persons. The defendant's shoe was compared with the tracks, and the shoe had holes in it, and an impression of it in the dust was like that made by the track. The defendant afterwards admitted that he and Wemett were up there by the schoolhouse on the night prior to that on which the killing took place. There was evidence which tended to show that prior to the making of the tracks we have spoken of, and after the time defendant claims he and Wemett were up there, a large drove of cattle had been driven over the identical place. The revolver lying near the dead man was shown to have been in the drawer of the defendant's shop a day or two before the killing, and the drawer was locked, and the key in the defendant's possession. The circumstances surrounding the finding of the body of the wife indicated that she had not been killed in the barn where found. Indeed, the evidence showed clearly that the body was not there when the search was made near midnight.

XI. The record in this case shows that many words in the various instructions are underscored, thus calling the attention of the jury more particularly to them. This is improper, and we speak of it here so that it may not be done hereafter.

The tendency of it is to give undue weight and force to certain words, or sentences, and thereby to prevent the jury from giving to other portions of the charge the weight and consideration which they should have.

XII.   The fifth instruction is assailed as erroneous, and it is expressly complained of as ignoring the theory of the suicide of Wemett.   The law touching the theory of suicide is fully covered by other instructions.   This instruction defines malice aforethought, and in closing says:   "And it devolves upon the perpetrator of the act, if he would shield himself from the legal consequences, to rebut by evidence the presumption against him that the law raises.   If the killing was accidental, or an excusable, or a justifiable homicide, or if it was only what is termed manslaughter, the party charged with the crime must prove the facts in defense; or, if he fails to do so, he must be a murderer.   The *presumption* of killing *with intent to kill* remains until it is rebutted by competent proof."   The underscoring appears in the instruction as it was given by the trial judge.   It is said that the instruction is open to the objections that it refers to an accidental, or justifiable homicide, and that no such question was involved in the case. That is true, and in incorporating such statements in the charge the court was in error.   In view of the real and only defense,—suicide,—the instruction, we think, in other respects was hardly proper, and was calculated to work prejudice to the defendant.   By this instruction matters are injected into the case which are foreign to any issue presented, and the jury are told that in the case stated the one charged with the crime must "prove the facts in defense, or, if he fails to do so, he must be a murderer."   The effect of this may have been to divert the minds of the jury from the real issue, and to confuse them; and in any event, it was uncalled for, and improper.

XIII.   The errors assigned to the eleventh and twelfth instructions will be considered together.   The jury was told that "the drawing of the pistol shows premeditation; the cocking of it, leveling it at a

particular vital spot, shows deliberation." In the way in which this language is used in connection with the following instruction it was about equivalent to telling the jury that the defendant did the drawing, cocking, and leveling the pistol the discharge from which killed Wemett. It cannot be said that its effect was simply to illustrate a certain legal principle, no matter what the court may have intended, for it is not *any* pistol which the court is speaking of, but *the* pistol, presumably meaning the weapon the discharge from which caused Wemett's death. And the court told the jury that: "The conclusion is irresistible that under the law, and the undisputed facts in this case, the killing .of George Wemett was an act possessing all the elements of murder in the first degree, as defined by our statutes. It *was* murder in the first degree. It is nothing less." It is true that in another instruction the law touching Wemett's death by suicide is given to the jury; still in the instruction under consideration, the court steps in, and relieves the jury from the duty which the law casts upon them, of determining from the evidence the guilt or innocense of the defendant, and the degree of crime, if any, of which he is guilty, and broadly and in the most positive language tells the jury that Wemett was murdered. The jury must have been impressed with the conviction, from the reading of this instruction, that under the direction of the court it was their duty to find the defendant guilty of murder in the first degree. It is so sweeping as to leave nothing for their consideration save the mere formal matter of returning a verdict of guilty of murder in the first degree, and fixing the punishment therefor. Under our law and system of procedure, the trial judge has no right to weigh the evidence for the jury, and direct them as to what they shall find from the facts in the evidence. A clearer case of usurpation of the powers and

province of the jury will hardly be found. If trial judges may thus arrogate to themselves the duty of jurymen, there would be little use having a jury, and the life and liberty of the citizen would be in the keeping of one man. The instruction settled, in advance of the jury's retiring for deliberation, the fact that Wemett did not die by his own hand; thus entirely depriving the defendant of the consideration by the jury of the only defense in the case. There can be no question that it was erroneous, and highly prejudical.

XIV. In the fourteenth paragraph of the charge of the court, the jury was told that: "The defendant here sets up no affirmative defense, and no matters in extenuation. He relies wholly upon the denial of his guilt, and upon his anticipation of a failure by the state to prove a case against him." It occurs to us that the thought of the instruction is that the defendant knows he is guilty, has no defense, but hopes to escape justice by reason of the inability of the state to show his guilt. The instruction impresses us as pregnant with insinuation of the guilt of the defendant, and manifestly unfair in its phraseology.

XV. In the twelfth division of the charge to the jury it is said "follow your convictions" in determining whether or not the defendant is the guilty man. It is urged that this was an invitation for the jury to ignore the evidence and the law, and convict the defendant, if they felt so inclined. Taking the whole instruction together, it is not open to the criticism made, though on a re-trial it would be well to so change the phraseology as to avoid such an objection.

XVI. Other instructions are complained of, but we do not think they need special consideration. It may be proper, however, to say that the charge in this

case is not one which it would be advisable to follow upon another trial. Without referring to particular instructions, it may be said that there is a vein of assumption, argument, and denunciation running through several of the instructions given which cannot be approved, and which should be avoided upon another trial.

XVII. Complaint is made of the refusal of the court to give instructions 2 and 4 asked by the defendant. They relate to the rule for determining questions of fact from circumstantial evidence, and to the effect of circumstances in evidence which may tend to show that Wemett committed suicide. While it may not have been improper to have given these instructions, still, in view of those given touching the same matter, we cannot say that it was error to refuse them.

XVIII. Finally, it is contended that the verdict is not warranted by the evidence. In view of another trial, it is not proper for us to discuss the weight and sufficiency of the evidence. This is an important case to the state and to the defendant. From our investigation of this record we are thoroughly satisfied that the defendant did not have the fair and impartial trial which the law guaranties to all persons charged with the commission of a crime. For the reason, heretofore given, the judgment below is REVERSED.