STATE OF IOWA v. JOHN HETLAND, Appellant.

**Rape:** CORROBORATION. There must be some evidence corroborating
1 the prosecutrix and tending to connect the defendant with the commission of the offense, to justify conviction for assault to commit rape, but its sufficiency is a question for the jury.

**Same.** The denial by a defendant charged with assault with intent to
2 commit rape that he used any force is ground for the inference that he attempted to have intercourse with prosecutrix and would tend to connect him with the offense, even though not corroborative of her claim that force was used: and the flight of defendant knowing that he was charged with the crime would tend to connect him therewith.

**Same:** FLIGHT: INSTRUCTION. An instruction that if defendant,
3 knowing he was accused of the crime of assault with intent to commit rape, fled to retard or avoid prosecution the fact of his flight should be accepted as evidence tending to connect him with the offense, was not objectionable as ignoring his claim that he did not flee because of the accusation.

**Instruction:** REASONABLE DOUBT. An instruction that if the jury
4 found beyond a reasonable doubt that the crime of assault with intent to commit rape was committed by some one, that if defendant was the person making the assault, and that he did so

with intent to have sexual intercourse with prosecutrix against her will he should be convicted, was not objectionable as failing to require a finding beyond a reasonable doubt that defendant was the assailant and that he intended to commit the crime of rape, where the jury was plainly told that unless proof thereof was beyond a reasonable doubt he should not be convicted of the crime charged.

Flight: RIGHTS OF ACCUSED ADMITTED TO BAIL: EVIDENCE. While ordinarily an accused who has given bail may go where he chooses if his bondsmen do not object, still the fact that he has given bail will not preclude proof of flight, if to avoid or retard prosecution. Evidence held to show that defendant admitted to bail fled to retard or avoid prosecution.

*Appeal from Wright District Court,—*HON. W. D. EVANS, Judge.

WEDNESDAY, MARCH 10, 1909.

THE defendant was convicted of assault with intent to rape, and appeals.—*Affirmed.*

*W. E. Bullard, T. D. Healy,* and *Healy & Healy,* for appellant.

*H. W. Byers,* Attorney General, and *C. W. Lyon,* Assistant Attorney General, for the State.

LADD, J.—The accused was the pastor of the Norwegian Lutheran Church at Belmont. His wife was away on a visit, and while in Des Moines he employed Senna Oklund to do his housework, stipulating to pay her railroad fare to Belmont and $4 per week for her services. They reached that place in the afternoon of April 12, 1906, and she was assigned to the east room of the upper story of the house, to which her trunk was taken. After the evening meal, which she had prepared, defendant's son departed with a neighbor's boy to stay at the latter's home over night. Prosecutrix completed her work and

was invited by defendant into the sitting room. She declined, with the statement that she had better stay in the kitchen as she was suffering from a cold. He suggested a little whisky and warm water, and, being answered "that maybe it would be a good thing," got some for her and took a little himself. Shortly thereafter and at about nine o'clock she retired to her bedroom, but, as there was no key, did not lock the door. Scarcely had she extinguished the light and gotten into bed, when the accused, as she testified, entered the room and got into bed with her, saying that he meant to sleep with her, as he had no wife, and that "there should not be any baby of it." It is unnecessary to describe the struggle which followed, save to say that she escaped from the bed and also from the house, notwithstanding his efforts to restrain and overcome her, and, in her nightclothes, reached an outside closet with him still pursuing. She was able to exclude him by throwing herself against the door, and, after some parley, induced him to bring her shoes and some clothing, and, upon his return to the house, she fled to the home of one Johnson, some sixty rods distant, and immediately made complaint.

Her testimony was sufficient to establish the commission of the assault as alleged, but to justify the conviction of the defendant this must have been corroborated by other evidence tending to connect de-
1. RAPE: corroboration. fendant with the commission of the crime. The quantum of such evidence is not other-wise prescribed by law. If there was any evidence tending to strengthen or corroborate the testimony of prosecutrix, and thereby to single or point out the defendant as the perpetrator of the offense, its sufficiency was for the jury. *State v. Ralston,* 139 Iowa, 44; *State v. Stevens,* 133 Iowa, 684; *State v. Norris,* 127 Iowa, 683; *State v. Carnagy,* 106 Iowa, 490.

Was there such evidence? We think there were three circumstances which tended to corroborate the prosecutrix: (1) Thompson testified that in soliciting him to sign a bail bond defendant said in reference to the charge that he had used no force; (2) Mrs. Hextal testified that, in speaking of the same charge, defendant declared · that he had never used any force or power on prosecutrix; and (3) the alleged flight of the defendant. If, as the jury might have found, the defendant made the statements to Thompson and Mrs. Hextal, it might have been inferred therefrom by the jury that· he admitted an attempt to have intercourse with prosecutrix, though without the exertion of force. This does not seem to be controverted by counsel for appellant; but they insist that, even if this were so, such admission would not constitute corroborative evidence such as contemplated by the statute. Their thought is that the use of force must be corroborated, and reliance is put on *State v. Cassidy,* 85 Iowa, 145. The court, in what was there said, had reference to the sufficiency of the evidence as a whole to justify conviction. This is evident from the citation of *State v. McLaughlin,* 44 Iowa, 82, where it was said that a confession of having had sexual intercourse at the time alleged might be considered as corroborative evidence. In *State v. Forysthe,* 99 Iowa, 1, it was again decided that evidence of defendant's admissions that he had had· intercourse with prosecutrix was evidence tending to connect the defendant with the commission of the offense. See, also, *State v. Sigg,* 86 Iowa, 746. The corroboration exacted is not of· the commission of the offense, but of the accused's connection therewith, and, if it is made to appear that he had admitted having sexual intercourse or attempted it at about the time alleged, this would tend to point him out as the perpetrator of the offense, which might be established by

*2. SAME.*

the evidence of the prosecutrix alone. If then it might be inferred from what defendant said to the two witnesses that he admitted having attempted intercourse with prosecutrix without force, this might have been found to be sufficient corroboration. So, too, if the jury found that he fled the country to avoid or retard prosecution. *State v. Ralston,* 139 Iowa, 44. The ground for receiving such evidence is that an inference of defendant's guilt of the crime charged may be drawn therefrom. If so, its tendency is to point out the guilty person. We are of opinion that the evidence was sufficient to carry the case to the jury.

II. In the sixth paragraph of the charge the court instructed the jury with respect to proof of flight, and that: "If the offense was committed, and prosecutrix charged him therewith, and defendant knew that she so accused him, and while so knowing, thereupon fled from the vicinity for the purpose of avoiding or retarding prosecution in the case, then such flight is admitted in law as a circumstance against him, and it is to be received as evidence tending to connect him with the commission of the crime charged. In such case this is corroborative evidence within the meaning of the law tending to connect the defendant with the commission of the crime charged. The credibility, weight, and sufficiency of it as such corroborative evidence is a question solely for your determination in the light of all the evidence in the case." This instruction is criticised for that (1) it treats evidence of flight alone as furnishing sufficient corroboration, and (2) because it ignores, as is said, the explanation of the defendant. As previously remarked, the theory upon which such evidence is received is that the accused has departed because of his consciousness of guilt, and manifestly the probative force of such an inference is its tendency to show that

3. SAME: flight: instruction.

the accused had committed the particular offense. Its effect then tends to point out the accused as the guilty person. Its sufficiency was left to the jury, and properly so; but it is said that the instruction excluded the explanation given by the accused. He testified that some days after his arrest for this offense he "heard through a friend that my enemies were disappointed because I secured bond. They told me they were now trying to get in another case so they could send me to jail. I learned this before I left. I intended to come back and stand trial in the case in which I had given the bond." Later another charge was presented to the grand jury, which returned an indictment, and of which he was subsequently acquitted. .The effect of this explanation was to deny that he had fled on account of the accusation made in this case, and the court, as plainly appears in the instruction quoted, excluded any probative force thereof in the absence of a finding that he had fled for the purpose of avoiding or retarding prosecution in this case. See *State v. Poe,* 123 Iowa, 118. This gave the accused the benefit of the only explanation undertaken.

III. The jury was told in the twelfth instruction that if they found beyond a reasonable doubt that the offense was committed by some one, and if they further

4. INSTRUCTION: reasonable doubt.

found that the defendant was the person making the assault, and that he did so with intent to have sexual intercourse with prosecutrix by force and against her will, he should be convicted. It will be noted that the last two findings are not exacted beyond reasonable doubt, but further on the jury were advised that, if they entertained a reasonable doubt whether he intended to commit the crime of rape, he should not be convicted of a higher offense than assault and battery, and that in that event he might be convicted of the latter offense if it were found beyond reasonable

doubt that he laid violent hands upon prosecutrix; and then followed a similar statement as to assault, and that, if there was a reasonable doubt as to whether an unlawful assault had been committed, a verdict of not guilty should be returned. When considered as a whole, this instruction was not subject to a construction which would authorize a conviction without a finding that he was the person who committed the offense and with the intent charged beyond a reasonable doubt. While this qualification of these findings was not exacted in the fore part of the instruction, the jury later was plainly told that, unless the proof thereof was beyond reasonable doubt, he should not be convicted of the crime alleged. Moreover, in the third instruction the jury had been definitely instructed that to convict each of these findings must be beyond reasonable doubt. The criticism is without merit.

IV. Appellant contends there was no evidence of flight. This is on the theory that, as bail bond was executed, he was entitled to go where he pleased, if his bondsmen did not object. Ordinarily this may be so, especially when the accused submits himself to the jurisdiction of the court upon the return of an indictment; but this does not preclude proof of flight, notwithstanding a bond has been given, if this is to avoid or retard prosecution. *Saylor v. Com.* 22 Ky. Laws, 472 (57 S. W. 614); *State v. Wingfield,* 34 La. Ann. 1200; *State v. Lee,* 17 Or. 488 (21 Pac. 455); *Porter v. State,* 2 Ind. 435. The defendant had undertaken to appear at the next term of court, which convened April 23, 1906, and submit to its orders. Instead, he left the county on April 22d, and on the following day, that on which court convened, proceeded to Britt, and from there went to Canada by way of St. Paul and Minneapolis at 2 o'clock on the morning of April 24th. On the next day an indictment was

5. FLIGHT: rights of accused admitted to bail: evidence.

returned in this case, and he was so advised upon his arrival in St. Paul, and another indictment also was returned charging him with an assault on a girl under the age of consent. Upon being advised, he went to Minneapolis, and then on to Winnipeg and different places in Canada. From Winnipeg he wrote to Anderson under an assumed name April 27th, saying, among other things: "I understood it would be difficult with bonds, so I thought it best to stay away awhile. Is it Mr. Larson that made complaint in case number two? There has been no action? Has anybody sent for Mrs. Hetland, and has she come? What is the people's opinion about the case, and is there any talk about settling the case outside of court? You must not let anybody know I am here. Should I be in danger you must telegraph immediately. Burn this letter and save the address until a week from today my address will be Watson, Saskatchewan, Canada. Over a week from now, address will be North Battleford, Saskatchewan, Canada." He testified that his attorney had said to him the trial would not occur until October, and that he would appear. The day of leaving Belmont he had arranged with Mrs. Hextal to keep his sons and told her to write his wife if he should not come back. Ole Thompson saw him in Minneapolis at a church conference June 19, 1906, when he inquired if Thompson thought any one there would report him, and said he thought it best for him to go back and have a trial, else it would hang over him always. Aconger was at the same conference, and to him defendant said that, if any one would send word to the sheriff at Belmont, he could or would take the first train out of town. Jacob Thompson testified that defendant had said to him after his arrest that Sheriff Brown had a good reason for saying he did not want him when he was in St. Paul, as he could not find him, for he had stayed outside the town. It

appeared that the sheriff had gone there to serve the bench warrants immediately upon their issuance, but defendant was not arrested until July 13, 1906. This happened in Mason City when passing through on his way to Chicago. These circumstances have been detailed as the best answer to the suggestion of want of evidence of flight. At the time fixed for his appearance in the district court, he was on the way to a foreign country. He was in fact fleeing from this prosecution, even though he testified that he intended to return, and that his flight was to avoid going to jail on the other charge. The jury might have found that his flight was from either or both charges, and the weight to be given the evidence thereof was for the jury.

Appellant relies somewhat on *People v. McKeon*, 64 Hun, 504 (19 N. Y. Supp. 486), wherein the accused attempted to escape from jail, in which he was confined on two charges; the court holding evidence thereof should have been excluded on the ground that it was impossible to say which offense he was trying to avoid. The decision was by an intermediate court, and, as we think, is unsound. Such evidence should be received subject to explanation, and the jury allowed to determine, in view of all the circumstances, the weight it is entitled to receive.

There was no error in the rulings on the admissibility of evidence, and the material allegations of the crime were stated with sufficient clearness to the jury.— *Affirmed*.

EVANS, C. J., took no part.