## STATE OF IOWA v. WM. McPURSLEY, Appellant.

**Rape:** EVIDENCE: CORROBORATION. The evidence in this prosecution for rape is held sufficient to support conviction; and it is also held that admission by the accused that he had intercourse with prosecutrix at the time alleged, together with a written agreement to pay her a sum of money for the injury inflicted, was a sufficient corroboration of her testimony.

**Same:** IMPEACHING EVIDENCE. Although defendant, accused of rape, denied having admitted the crime, it was competent for the State to show on rebuttal that he had admitted having intercourse with defendant at the time in question, as tending to impeach his denial of connection with the crime.

*Appeal from Polk District Court.*—HON. W. H. McHENRY, Judge.

WEDNESDAY, JUNE 30, 1909.

SUPPLEMENTAL OPINION ON REHEARING, THURSDAY, OCTOBER 28, 1909.

THE defendant was convicted of the crime of rape, and appeals.—*Affirmed.*

*S. Joe Brown,* for appellant.

*H. W. Byers,* Attorney-General, and *Chas. W. Lyon,* Assistant Attorney-General, for the State.

SHERWIN, J.—The crime for which the defendant was convicted is charged to have been committed Sunday evening, October 4, 1908, on a country road between Des Moines and Marquisville, Iowa. The prosecuting witness

is a negro woman, who at that time was about seventeen years of age and married. The defendant is a negro, and at the time in question he was a coal miner and a local preacher of the African Methodist Church. The prosecuting witness, Mrs. Gabrella Harris, lived with her parents, Mr. and Mrs. Bryant, in Marquisville, and the defendant and his wife lived near the Bryant home. The families were on friendly terms, and Mrs. Harris was a frequent visitor at the defendant's home, and a frequent occupant of his conveyance on trips to and from Des Moines. In the afternoon of the day in question the defendant and his wife, Mrs. Harris, and one Andy Anderson, a boarder at the defendant's home, went to Des Moines in the defendant's two-seated conveyance. It was dark when they returned from Des Moines, and the crime was committed, if at all, between Des Moines and Marquisville. Mrs. Harris testified that, when they reached the Norwoodville road, the defendant's wife, Anderson, and herself got out of the buggy at the defendant's instance, and that the defendant then told her to get back into the buggy; that she objected to doing so, and cried and pleaded, and threatened to walk home, whereupon the defendant told her that if "she started down that road, he would take his gun and shoot her head off." Mrs. Harris further testified that she then got into the buggy with the defendant, and that he drove along the Norwoodville road about a half mile, when he showed her a revolver and said to her, "If you hollow and go on I will take this gun and blow your heart out of you;" that she tried to push him away without avail, and that he then had sexual connection with her. Mrs. Harris also testified that Anderson and the defendant's wife came up to the buggy and saw the defendant in the act, but that they said nothing. Further testifying, Mrs. Harris said that they all rode back to the Marquisville road, where the defendant again compelled his wife and Anderson to leave the buggy, and that he then drove back on the Norwoodville road and

raped her again. After the second ravishment, according to the testimony of Mrs. Harris, the party rode home together in the buggy,.she occupying the front seat with the defendant. The transactions alleged to have taken place on the way home from Des Moines were all denied by the defendant, his wife, and Anderson. When Mrs. Harris reached the home of her parents that night, she immediately made complaint to them of the defendant's action. The next day the defendant went over to the Bryant home, and, as the witnesses testify, "begged pardon as a Christian." The pardon sought was not granted, however, and a few days thereafter the defendant executed a written promise to pay Mrs. Harris $45 in deferred payments, to compromise the injury he had inflicted.

There is also evidence in the record tending to show that at the meeting at the Bryants' on Monday the defendant admitted that he had compelled Mrs. Harris to yield to him the night before. It is true that he denies any admission of rape, but he nowhere denies an admission of sexual intercourse at the time in question, nor the execution of the written obligation to which we have referred.

The appellant earnestly insists that he should not be held for rape on the testimony produced by the state, and that if the testimony of Mrs. Harris be accepted as true, there is still a lack of the corroboration required by the statute. The story told by Mrs. Harris seems almost beyond belief. If true, it either involves Anderson and Mrs. McPursley in the moral guilt of the defendant, or shows that the defendant intimidated them as well as the prosecutrix. On the other hand, such an accusation for mercenary or other improper purposes would hardly locate the place, and fix the time of the crime, in the immediate presence of witnesses who would certainly know the truth. It is a very singular case, but we reach the conclusion, after a careful study of the evidence, that the verdict and judgment have

1. Rape: evidence: corroboration.

such support that we should not disturb them. The court and jury saw and heard the witnesses, and were much better able to determine the truth of the charge than we are. It may be that the moral standard of the prosecutrix is not as high, or as firmly established, as it should be. But, however that may be, she was and is entitled to the protection of the law, and if the defendant compelled her to submit to his lust by the use of force amounting to rape, he should suffer the penalty therefor. The admissions of the defendant, together with his subsequent execution of the written obligation referred to, furnish sufficient corroboration of the prosecutrix. *State v. Ralston,* 139 Iowa, 44; *State v. Stevens,* 133 Iowa, 684; *State v. Hetland,* 141 Iowa, 524.

The appellant asked instructions defining included offenses. They were refused, but the court in its own language fully covered the subjects of the requests.

The defendant was a witness in his own behalf, and on cross-examination he was asked if he had not admitted the crime. He answered that he had not, and in rebuttal the State was permitted to show that he had admitted having sexual intercourse with Mrs. Harris on the night in question. There was no error in the ruling. The answer tended at least to impeach his testimony on direct examination, and to connect him with the crime. *State v. Ralston, supra; State v. Forsythe,* 99 Iowa, 1.

2. SAME: impeaching evidence.

We think the judgment should be, and it is, *affirmed.*

## SUPPLEMENTAL OPINION.

PER CURIAM.—In his petition for a rehearing the defendant does not present any new points or call our attention to any matters claimed to have been overlooked in the original consideration of the case; but he earnestly reargues the entire case, and insists that the evidence was

wholly insufficient to warrant the verdict of guilty which was returned against him. We have again given the record a most careful consideration, and are abidingly convinced that we should not disturb the judgment and verdict. The evidence was somewhat fully reviewed in the original opinion, and it is unnecessary to again discuss it here. The circumstances surrounding the commission of the crime, however, are such as to throw grave doubt on the nature of the crime committed, and, while we are constrained to overrule the, petition for a rehearing, we do feel that the defendant's case is one which may well receive the early consideration of the board of parole.