The State v. Mahan.

THE STATE v. MAHAN.

1. **Murder:** SELF-DEFENSE: VERDICT UNDER PROPER INSTRUCTIONS NOT DISTURBED. Where on a trial for murder, in which self-defense was relied on, the court properly instructed the jury to the effect that, if the danger which seems to threaten the person assailed can be avoided or prevented by any other reasonable means within his power, he is not justified in taking the life of his assailant; and there was evidence from which the jury might well have found that the defendant could have avoided all danger from his assailant by retiring from the conflict, or that, by appealing to the by-standers—who were friendly to him—he might have secured protection, this court cannot interfere with such finding, and reverse a judgment upon a verdict in accordance therewith.

2. ———: DUTY TO INSTRUCT AS TO OFFENSES INFERIOR TO THE ONE CHARGED. Whether it is necessary or proper for the court, in any case, to instruct the jury as to the offenses lower than that charged in the indictment, and which are included in it, must depend on the facts of the case as they are shown by the evidence; and where, on a trial for murder, there was no possible theory of the evidence upon which a verdict of guilty of any of the offenses included in the indictment, lower than manslaughter, could have been found, *held* that the court properly instructed the jury that they could not convict the defendant of any offense lower than manslaughter.

3. ———: SELF-DEFENSE: INSTRUCTION: DANGEROUS CHARACTER OF ASSAULT: PROVINCE OF JURY. While it is true that an assault made without weapons may, in some cases, be highly dangerous to the one assailed, and while it is true, also, that, as a general rule, it is the province of the jury to determine from the evidence whether or not the assault was of such a dangerous character as to justify the taking of the assailant's life in self-defense, yet, in this case, where the only unusual danger to the assailed was in the fact that the assailant had a stone in his hand, it was not error for the court to instruct the jury, in effect, that, unless the stone was a dangerous weapon, or to a reasonable person in defendant's position would have appeared to be such, he was not justified in striking the fatal blow. This point reconsidered and affirmed in opinion on rehearing.

4. ———: ———: INSTRUCTIONS MUST BE CONSTRUED TOGETHER. The court gave an instruction beginning thus: "If the defendant gave the *unlawful* fatal blow," etc.; to which defendant objects, on the ground that the jury was thereby told, in effect, that the fatal blow was unlawful. But *held* that the instructions should all be considered together, and that, when so considered, the jury could not have been misled by the use of the word "unlawful" in the instruction referred to.

5. **Instructions**: REPETITION NOT REQUIRED. It is not error to refuse to give instructions asked, when they are substantially embodied in the charge of the court.

*Appeal from Clayton District Court.*

WEDNESDAY, MARCH 17.

THE defendant was accused of the crime of murder in the first degree committed, as was charged in this indictment, in the killing of one Dennis Murphy. He was convicted of manslaughter, and sentenced to a term of imprisonment in the penitentiary, and from this judgment he appeals.

*Garber & Corlett* and *Murdock & Larkin* and *Noble & Updegraff*, for appellant.

*Smith McPherson, Attorney-general*, for the State.

REED, J.—The killing of Dennis Murphy occurred on the second of October, 1881. He and the defendant met on the evening of that day, in a saloon, and while there became involved in a quarrel in which Murphy was undoubtedly the aggressor. He used very insulting and offensive language towards defendant, and in the course of the quarrel threw a beer glass at him. The interference of the saloon-keeper and others, however, prevented any actual conflict between the parties in the saloon, and, after the quarrel was ended, Murphy went out of the house, and sat down near the door. Soon afterwards defendant left the saloon with the intention of going to his home. He had with him a cross-cut saw, about four feet in length, which he carried on his shoulder. When he stepped out of the saloon he remarked to some of the by-standers, (referring, doubtless, to what had occurred in the saloon,) that the excitement had not been as great as they had anticipated. At this, Murphy arose and said it could be much greater if he wanted it to be, and that if he was a man he would stop and have it out. Defendant replied to this

that he had heard enough from him, and walked away, but Murphy followed him, using abusive language towards him and telling him that if he was not a coward he would stop and fight it out. When defendant had gone about fifty feet from the saloon he stopped and, turning towards Murphy, asked him if he wanted a fuss, to which he answered, yes, that he wanted to fight it out. At this time the parties were but a few feet apart. Murphy had a stone in his hand, and defendant told him to drop it. But he made a motion with his hand as if about to strike defendant, and defendant immediately struck him with the saw. The blow took effect in Murphy's neck, and inflicted a wound from which he died within an hour. There is but little controversy as to the facts of the transaction, and they are narrated above substantially as they were related by defendant on the trial.

I.   The first position urged by defendant's counsel is that, upon the evidence, the jury should have acquitted him on the ground that in striking the fatal blow he

1. MURDER: self-defense: verdict under proper instructions not disturbed.

acted in the reasonable and necessary defense of his own person from injury from the assault by Murphy.

We think, however, that we would not be warranted in disturbing the judgment of the district court on this ground. The jury may well have found from the evidence that defendant was not in such danger as to justify him in resorting to the use of a dangerous weapon, or in taking the life of his assailant. The law of self-defense is well-settled in this state. The killing of an assailant is justified on this ground only when it is, or reasonably appears to be, the only means of saving the life of the one assaulted, or of preventing some great injury to his person. If the danger which seems to threaten the person assaulted can be avoided or prevented by any other reasonable means within his power, he is not justified in taking the life of his assailant. *The State v. Benham*, 23 Iowa, 154; *The State v. Neely*, 20 Id., 108.

The law on this subject was correctly stated to the jury in the instructions of the court, and they may well have found from the evidence that defendant could have avoided all danger from Murphy's assault by retiring from the conflict, or that by appealing to the by-standers (who were friendly to him) he might have secured protection therefrom.

II. The court instructed the jury that they could not convict the defendant of any offense lower than manslaughter, and that they should either convict him of murder or manslaughter, or acquit him. The giving of these instructions is assigned as error. It is certainly true that a number of offenses lower than manslaughter are included in the indictment, and under our statute, Code, § 4465, if the evidence failed to establish that defendant was guilty of either murder or manslaughter, but did show that he was guilty of one of the lower offenses included in the indictment, he might have been convicted of such lower offense. It was held in the *State v. Vinsant*, 49 Iowa, 241, and *The State v. Peters*, 56 Id., 263, that the district court erred in not instructing the jury as to the offenses lower than those charged in express terms in the indictments, which were included in the charges, and the judgments were reversed on that ground. The ruling in both cases is based on the ground, however, that, while under the evidence there might have been some doubt as to whether the defendant was guilty of the offense of which he was convicted, it tended strongly to show that he was guilty of one of the lower offenses, and hence that he had the right to have the jury pass on the question whether he was not guilty of such offense rather than of the higher one of which he was convicted. And whether it is necessary or proper for the court, in any case, to instruct the jury as to the offenses lower than that charged in express terms in the indictment, which are included in it, must depend on the facts of the case as they are shown by the evidence. If the evidence in a case should show beyond all question that the crime of murder had been committed,

2. ____ :
duty to instruct as to offenses inferior to the one charged.

and the only controverted question of fact should be whether
the accused was the guilty party, it certainly would not be
proper for the court in that case to instruct the jury as to
the offenses lower than murder, which were included in the
indictment.    In the case before us, as we have seen, it was
admitted by the defendant that he had by violence inflicted
on the person of Murphy a wound which caused his death,
but his claim was that his act in inflicting such injury was
not unlawful.   The question in controversy was as to whether
he struck the fatal blow unlawfully, and, as it was conceded
that death resulted in consequence of the blow, it would fol-
low necessarily that if the blow was unlawful he was crim-
inally responsible for the death which resulted from it.   On
the conceded facts, then, he was either criminally responsible
for the death of Murphy, or he was not guilty of any crime.
There was no possible theory of the evidence upon which a
verdict of guilty of any of the offenses lower than man-
slaughter, which are included in the indictment, could have
been found.   The instructions of the court on this question
are, therefore, correct.

III.   In an instruction on the right of self-defense, in
which the jury are told that defendant had the right to take
the life of Murphy in resisting the assault made

3. ——:
self-defense :
instructions:
dangerous
character
of assault:
province of
jury.

by him, if that reasonably appeared to be the only
means of saving his own life, or of protecting his
person from injury, the court used the following
language: "But no words spoken by Murphy,
however insulting, and no assault upon defendant without a
dangerous weapon, or the appearance of one, would justify the
defendant in striking the fatal blow."   Exception is taken by
defendant's counsel to this clause of the instruction.   Their
position is that the question whether an assault, whatever its
circumstances may be, is dangerous to the person or life of
the one upon whom it is committed, is one of fact, and is to be
determined by the jury, and that the court invaded the pro-
vince of the jury, when it gave the portion of the instruc-

tion quoted above. That an assault made without weapons may, in some cases, be highly dangerous to the one assailed, is doubtless true. There may be such disparity between the parties in physical strength, or the assailant may be of such ferocious disposition, as that his assault, without any weapon at all, would be highly dangerous to the person assailed. In this case, however, there was no evidence of the presence of any circumstance, except the fact that Murphy had the stone in his hand, which rendered his assault specially dangerous to defendant. It does not appear that he had any advantage of defendant in physical strength, and defendant's conduct at the time indicates that the only circumstance which gave him any special concern was the fact that Murphy had the stone, and his testimony in effect is that he struck Murphy with the saw because he thought he was about to strike him with the stone. While, as a general proposition, the portion of the instruction excepted to may be subject to the criticism made by counsel, as applied to the facts of the case, we think it is not erroneous. The record very clearly shows that the only claim urged upon the trial was that the assault made by Murphy upon defendant was rendered dangerous by the fact that the assailant was armed with the stone, and the fatal blow was struck for the reason that he was so armed. Under these circumstances, we think it was proper for the court to tell the jury, as was done by this instruction, in effect, that, unless the stone was a dangerous weapon, or to a reasonable person in defendant's position would have appeared to be such, he was not justified in striking the fatal blow.

IV. The court gave the following instruction: "If the defendant gave the *unlawful* fatal blow not coolly and con-

4. — —: ——: siderately, but suddenly, under the influence and
instructions
must be con- in the heat of a strong passion, aroused by rea-
strued
together. sonable provocation, the law kindly presumes that the depravity of mind and heart, called malice aforethought, was not present prompting the act, and the crime in

that case is manslaughter and not murder." It is claimed by defendant's counsel that by this instruction the jury are told, in effect, that the fatal blow was unlawful, and it is possibly true that, if the instruction was considered entirely distinct from the other portions of the charge, it would properly be subject to this criticism. But it is not fair to so consider it. It should be read in connection with the preceding portions of the charge, and, when so read, we do not think that the jury could have understood it as an expression by the judge of the opinion that the blow was unlawfully struck.

In other instructions, the jury were told that it was for them to determine whether defendant acted in self-defense in striking the fatal blow, and that unless they were satisfied by the evidence, to the exclusion of every reasonable doubt, that he did not so act, they must acquit him.

Having told them this, the court proceeds, in the instruction in question and others, to instruct them as to the crime of which he may be convicted, if they found that the act was unlawful. The jury could hardly have been misled by the charge taken as a whole. They would understand by it that they were first to determine whether the act was unlawful, and that, if they did not find that it was unlawful, they were to acquit the defendant without further inquiry. But if they found that it was unlawful, they were next to determine the crime of which he was guilty. And they would understand that the language complained of referred to a fact, the existence of which they must have found before coming to the question spoken of in the instruction, rather than as expressing the opinion of the judge as to the existence of that fact.

V. Defendant complains of the refusal of the court to give certain instructions asked by him on the trial. But, in

5. INSTRUC-
TIONS: re-
petition not
required.
so far as they embody principles of law applicable to the facts of the case, they were substantially given in the charge of the court.

We have examined the record with care, and do not find

that any error was committed by the district court which prejudiced the rights of the defendant. The judgment is, therefore,

AFFIRMED.

ON REHEARING.

SEEVERS, J.—Upon the application of the defendant, a rehearing was granted as to the third paragraph in the foregoing opinion. To the end that our conclusions may be clearly understood, we think it best to set out a copy of the instruction excepted to. It is as follows: "If you find from the evidence that, as defendant walked along the street, he was followed by Murphy, who advanced upon him with the appearance of having a dangerous rock in his hand, and in such a manner, and with such movements, as to make defendant believe, as a man of ordinary reason and prudence, that he was in danger of death or great bodily injury from such assault, and that the blow with the saw was necessary to prevent such death or injury,—then you will find that defendant had the right to strike the fatal blow in self-defense; and in order to find this you will consider the time, place and situation of the defendant, the size of the weapon in the hand of Murphy, as it appeared to him, (defendant,) the manner of the attack, and the language used, and defendant's knowledge of Murphy's disposition and character, as shown by his conduct from the beginning of the difficulty between them to the time of the killing; but no words spoken by Murphy, however insulting, and no assault upon defendant without a dangerous weapon, or the appearance of one, would justify the defendant in striking the fatal blow."

It is not claimed that all the facts and circumstances preceding the fatal blow, bearing on the question of self-defense, are not sufficiently stated, but the point made is that the inquiry of the jury is unduly limited in the last clause of the instruction. It is said there is some conflict in the evi-

dence whether the deceased was armed with a deadly weapon at the time the fatal blow was struck. If the jury so found, then the nature and character of the assault, and all other circumstances, become immaterial, and under the instruction the jury were bound to find that the killing was not justifiable. We do not so understand the instruction, for, if it appeared to the defendant that the deceased was so armed, the defense was made out. For the purpose of ascertaining whether the defendant, as a reasonable and prudent person, had the right to so believe, the jury were directed to consider all the facts and circumstances from the beginning of the difficulty. If Murphy was not armed with a deadly weapon, and the defendant had no right to so believe, then the fatal blow was not struck for the purpose of protecting himself from great bodily harm, for the defendant testified, in substance, that he believed the deceased had in his hand a rock, and that the fatal blow was struck because he thought the deceased was going to strike him. The defendant was placed in a difficult position. Murphy had shown a disposition to have a difficulty with the defendant. While all this is true, unless the deceased at the time of the fatal blow was armed, or had the appearance of being armed, with a deadly weapon, we are forced to the conclusion that the killing was not justifiable under the facts and circumstances of this case.

The former opinion is adhered to.

AFFIRMED.