The State v. Sterrett.

THE STATE v. STERRETT.

80  609|
100  238|
100  505|

80  609
109  117

80  609|
120  247|
122  168|

1. **Manslaughter**: EVIDENCE TO SUPPORT VERDICT. Upon an indictment for murder, defendant was convicted of manslaughter. It was admitted that he killed the deceased, and upon the defenses of accident and self-defense the evidence (see opinion) was conflicting. *Held* that this court could not reverse the judgment on the ground that the verdict was not supported by the evidence.

2. ———— : INSTRUCTION AS TO LOWER DEGREES OF OFFENSE. Where, upon an indictment for murder, it was conceded all through the trial that the deceased was killed by the discharge of defendant's pistol, *held* that defendant was guilty of manslaughter, or not guilty of any crime, and that the court rightly instructed the jury that they should find the defendant guilty of manslaughter, or not guilty, without instructing as to lower grades of the offense. (See opinion for citations.)

3. ———— : SELF-DEFENSE : INSTRUCTIONS AS TO DEFENDANT'S PHYSICAL CONDITION. Where, in such case, the court instructed the jury that, in determining the guilt or innocence of the defendant and the question of self-defense, it was proper that they should consider the condition of his health, the place where the shooting occurred, the size and age and relative strength of the parties (both of whom were boys), and the evidence that the defendant was at the time suffering from fever, and pain in the head and side, it was not error, in another instruction, to direct that, notwithstanding his physical condition, if he inflicted the mortal wound, he was guilty of manslaughter, if he was not acting in reasonable self-defense.

4. ———: DEADLY WEAPON: WHAT IS. There was no error in the trial court's assumption that a twenty-two caliber pistol is a deadly weapon.

5. ———: EXTENUATING CIRCUMSTANCES : REDUCTION OF SENTENCE. In this case, where defendant, a schoolboy, was convicted of manslaughter for shooting his friend and schoolmate, and sentenced to imprisonment for two years, this court, while it can find no legal ground for reversing the judgment, in view of the extenuating circumstances ( see opinion ), reduces the sentence to six months.

*Appeal from Washington District Court.* — HON. W. R. LEWIS, Judge.

. FILED, MAY 12, 1890. .

THE defendant was tried and convicted of the crime of manslaughter, and he appeals:

*Newman & Blake* and *E. W. Tatlock*, for appellant.

*John Y. Stone,* Attorney General, and *George H. Henry,* for appellee.

ROTHROCK, C. J.—I. One Wade Campbell was killed by the discharge of a pistol in the hands of defendant on the eleventh day of March, 1884, at Morning Sun, in Louisa county. The defendant was soon afterwards indicted for murder. He was tried and convicted of manslaughter. An appeal was taken to this court, and the cause was reversed and remanded for a new trial. See 68 Iowa, 76. He was again tried, with the like result, and upon appeal to this court the judgment was again reversed. See 71 Iowa, 386. A change of venue was taken to the district court of Washington county, and the cause was again tried. The jury found the defendant guilty of manslaughter, and the court sentenced him to imprisonment for two years in the penitentiary. The cause is, therefore, here upon the third appeal.

The defendant was sixteen years of age at the time the alleged crime was committed. The deceased was aged eighteen years. They were pupils in the same

school; were classmates and friends. The defendant's seat was located near a stove in the schoolroom; and, on account of the heat, he took a seat, temporarily, near a window, and raised the window. The deceased was seated near by, and he closed the window. The defendant raised it again and placed a book under it. This appears to have been the only cause of any ill feeling between the parties. Shortly after this occurrence the school had a recess, and the deceased went out of the schoolhouse before the defendant. When the defendant came out of the door, the deceased appeared to be waiting for his approach, and seized him, and threw him down on his hands and knees. The defendant rose up, and there was a violent struggle between them. All of the evidence shows that at the outset, and throughout the struggle, the deceased was the aggressor, and the defendant endeavored to release himself and avoid the conflict. The defendant had a small pistol in his pocket known as a "twenty-two caliber." During the struggle, he pulled it from his pocket; and by some means it was discharged, and the ball entered the breast of the deceased near the left nipple, and he died from the effect of the wound within a very short time. It appears from the evidence that the defendant was quite sick on the night before the tragedy; that a blister was placed on his side; that he was still sick and feverish in the morning, and was advised not to go to school, but that he thought it better to be in attendance, as an examination was to take place in a few days, and he was anxious to be prepared for it.

There were two grounds of defense: *First*, that the pistol was discharged by accident; and, *second*, that, if the jury found it was not by accident or misadventure, then that the defendant was excusable on the ground of self-defense. The defendant testified in his own behalf, and stated that he did not intend to discharge the pistol, but that he took it from his pocket in the belief that deceased would then cease his assault

upon him, and that it was discharged by the deceased attempting to take the weapon from the defendant. If this were all of the evidence, it might well be claimed that the jury ought to have found a verdict of not guilty. But one witness testified that during the struggle the defendant said : "God damn you ! Let loose, or I will shoot you !" It is true, several other witnesses who were near by testified that they did not hear any such remark. The teacher of the school testified that, when defendant gave his account of the affair, immediately after it occurred, he said : "I shot him ;" and when the teacher asked why, the answer was, "He was abusing me." The teacher testified that the defendant said the Campbell boy was abusing him, and that he could not stand it any longer, and that he did not care if he did shoot Campbell, so he got him off. Another witness testified that he heard the defendant, on the same day of the shooting, say to one of his attorneys : "He had me down, and I told him to let me up or I would shoot him ; and I did."

We are asked to reverse the judgment on the ground that the verdict is not supported by the evidence. In our opinion, if we were to do so, it would be an unwarranted invasion of the province of the jury. We cannot hold that the evidence, without conflict, shows that the pistol was accidentally discharged ; and we may say the same of the evidence tending to show that the act was excusable upon the ground of self-defense. That question was for the consideration of the jury. We think the judgment ought not to be reversed on the ground that the verdict is not supported by the evidence.

II. It is claimed in behalf of appellant that the court erred because the jury were instructed that they should find the defendant guilty of manslaughter, or not guilty. It is urged that, as a felonious killing by violence involves the lesser crime of an assault, the jury should have been instructed that it was their duty to

2. ——: instruction as to lower degrees of offense.

determine the degree of crime, and that if they believed that the defendant was guilty of an assault only they should so find. It is true that the statute provides that, "where there is a reasonable doubt of the degree of the offense of which the defendant is proved to be guilty, he shall only be convicted of the lower degree" ( Code, sec. 4429 ) ; and, "upon an indictment for an offense consisting of different degrees, the jury may find the defendant not guilty of the degree charged in the indictment, and guilty of any degree inferior thereto, or of an attempt to commit the offense, if punishable by indictment." Code, sec. 4465. It is the duty of the court to direct the jury that they may find the defendant guilty of the lower grade of crime included in that charged in the indictment if they have reasonable doubts, under the evidence, of guilt of the crime charged. But we have frequently held that, where the evidence shows that the defendant is either guilty of the crime charged or not guilty, the above sections of the statute have no application, and it is not error to omit to charge the jury as to the lower grade of crime. *State v. Cole*, 63 Iowa, 695 ; *State v. Mahan*, 68 Iowa, 304; *State v. Crawford*, 76 Iowa, 330 ; *State v. Perigo, ante*, p. 37. In *State v. Cole*, it is said that "no rule is better settled than that an instruction should not be given upon a theory to which the evidence affords no support whatever. The question as to whether there is any evidence upon a given point is always a question for the court." It is conceded all through the record in this case that Campbell was killed by the discharge of defendant's pistol, and the defendant is either guilty of manslaughter or not guilty of any crime.

II. The instructions given by the court to the jury were a literal copy of the instructions given upon the

3. ——: self-defense : instructions as to defendant's physical condition.

second trial. It is claimed that certain of the instructions are erroneous. These instructions were carefully examined upon the last appeal ; and we then, in effect, approved them. The seventeenth instruction is particularly

claimed to be erroneous. It is as follows: "If you find that defendant, at the time of the alleged homicide, was laboring under excitement brought on by a fever, and was easily irritated and easily provoked, and during this condition he was assaulted by the deceased and abused, and under such excitement and provocation he drew a pistol, and discharged its contents into the body of deceased, and inflicted mortal wounds, from which death ensued, defendant would be guilty of manslaughter; and, if you so find, and further find that he was not acting in reasonable self-defense, it will be your duty to convict of the crime of manslaughter. But, if you find no guilt, then you must acquit; or, if you find that he was acting in reasonable self-defense, you should acquit." It is true, this instruction is not as clear as it might have been made; but its evident meaning is that, notwithstanding the physical condition of the defendant, if he inflicted the mortal wound, he was guilty of manslaughter, if he was not acting in reasonable self-defense. In the fifteenth and sixteenth instructions the jury were directed that, in determining the guilt or innocence of the defendant and the question of self-defense, it was proper that they should consider the condition of his health, the place where the shooting occurred, the size and age and relative strength of the parties, and the evidence that defendant was at the time suffering from fever and pain in the head and side. In view of these instructions, we think it cannot be said that there was any error. On the contrary, it appears to us that the instructions throughout were as favorable to the defendant as could well be asked.

It is said the court erred because it was assumed throughout the instructions to the jury that the pistol was a deadly weapon. We do not think this was error. It is true the weapon is very small. The diameter of the cartridge is little larger than an ordinary gun cap. But it, and others like it, were used by the boys attending that

4. —— : deadly weapon: what is.

school for shooting at a mark ; and mention is made of it by one of the witnesses as being used for shooting rabbits. When used at short range, there is no question that it is dangerous to life.

We have to say in conclusion that we can find no legal ground on which to base a reversal of this case ; and yet, when all the facts and circumstances are considered, the brand of a felon which is fastened upon this schoolboy by this judgment appears to us to be, enough, without any considerable term of imprisonment. There is much in the case, in the way of extenuation, in addition to that above recited. It appears that the ball which killed Campbell passed through the thumb of the defendant, and grazed his hat, before it entered the body of Campbell. This tends to show that the discharge of the pistol was accidental. All of the evidence as to the affray between the parties is to the effect that the defendant at the outset, and throughout, acted on the defensive. He was borne down and roughly used by the deceased in the presence of his schoolmates. He was sick, feverish and excitable, and no doubt keenly felt the outrage and insult put upon him. The evidence shows that he was of a peaceable, quiet and inoffensive disposition. His mother died when he was an infant; and, when he was about twelve years of age, he in some way became the possessor of the pistol which caused the death of Campbell. Justice is not always attainable. If it were, the man who sold this weapon to the defendant when he was twelve years old ought to be in his place. It is true the defendant had arrived at an age when the law holds him criminally responsible for his acts. But all men of mature years realize how little of judgment, discretion and caution is possessed by the ordinary boy of sixteen years of age. Nothing wrong can be attributed to him because he was the owner and possessor of the pistol. Other boys in the neighborhood had and carried them, and some of them had revolvers.

*5. ——: extenuating circumstances : reduction of sentence.*

In view of all the facts and circumstances disclosed in the record, we have concluded to reduce the term of imprisonment in the penitentiary to six months.

MODIFIED AND AFFIRMED.