STATE OF IOWA, Appellee, v. CLAUDE SHAVER, Appellant.

**INDICTMENT AND INFORMATION:** Included Offenses—Murder and Aggravated Assault. On the trial of an indictment for murder resulting from a mutual combat, the court may very properly submit the included offense of assault with intent to inflict great bodily injury, when the record contains evidence fairly supporting a finding of guilt as to such offense.

DE GRAFF and VERMILION, JJ., dissent, on the instant record.

*Appeal from Woodbury District Court.*—MILES W. NEWBY, Judge.

JULY 12, 1923.

OPINION ON REHEARING APRIL 5, 1924.

DEFENDANT was indicted for the crime of murder, and upon trial a verdict was returned finding him guilty of assault with intent to do great bodily injury. Judgment was entered upon the verdict, and defendant appeals.—*Affirmed.*

*George G. Yeaman,* for appellant.

*Ben J. Gibson,* Attorney-general, *Maxwell A. O'Brien,* Assistant Attorney-general, *O. T. Naglestad,* County Attorney, and *O. D. Nickle,* for appellee.

PRESTON, C. J.—It was claimed by defendant, and the evidence tends to show, that, in the forenoon of August 7, 1922, deceased, Livermore, threw bricks through the windows of defendant's home, cut the screens, entered the house, and broke up some of the furniture. About 3 o'clock in the afternoon of the same day, defendant was informed of the circumstances just narrated. Defendant returned home, and proceeded to repair the damage; and while he was in the act of rebuilding the fence, Livermore and his wife walked past the place, on their way to a store. Upon their return, they walked on the same side of the street on which the Shaver home is located, and as they passed the house, defendant claims, deceased took hold of his shirt. At any rate, an altercation took place, which resulted in a fist fight, in which deceased was knocked down by the defendant. Livermore's head struck the sidewalk, and he died about ten minutes later. As we understand it, there is some claim that the striking of Livermore's head on the walk was the cause of the death, rather than the blow. Though it is not entirely clear, we understand that there is some claim that defendant admitted that he intended to kill deceased. But this would be nothing more than an inference from the fact that the blows were struck by defendant, and the assumption that death resulted from the blows from defendant's fists. Defendant himself testifies that he did not intend to kill Livermore. The defendant claimed that what he did was done in self-defense. This defense was submitted to the jury, and the finding of the jury was against him on that proposition. Defendant further testifies:

"I hit him, and he hit me. He hit me a couple of times. I don't know exactly how many times I hit him,—four or five times. I know he went down on the sidewalk, as the result of the blows. Q. Mr. Shaver, did you intend to kill him? A. I should say not. Q. When you knocked him down on the sidewalk, you didn't find out what happened to him? A. No, sir, I did not; I walked away. Q. You knew he struck his head

pretty hard on the sidewalk? A. Yes, sir, I knew he hit the sidewalk; I didn't know how bad he was hurt.''

An autopsy was held. One of the medical witnesses testifies that the first examination showed a bruised cut running up and down and a little in front of the left ear, and reaching almost to the bone.

''There was a muscle of considerable thickness right here, and it was almost through this muscle. It was not a clean cut; it was a bruised cut. Then there was a discolored area over the left eye, two or three of lesser importance around on the forehead; and a later examination revealed that there was an injury on the right side over the temple, but that was not so noticeable from the outside, but was more noticeable at the time of the post-mortem. At the time of the post-mortem, which was had for the purpose of determining the cause of death, Dr. Jenkinsen was present. We first examined carefully the injury of the left temple, and when we removed the scalp, it showed an accumulation of clotted blood under the skin and muscles. This not being satisfactory as to the cause of death, we removed the upper part of the skull and examined the brain, and found, corresponding to the injury on the left side, a large blood clot, spreading out over the surface of the brain. This did not seem to account for the sudden death; but on the other side, we found a slight blood clot, very noticeable; and that didn't account for the sudden death. Then we removed the brain, and found a large thoroughly clotted quantity of blood pressing on the lower part of the brain, just where the spinal cord joins the brain,— a very important part of the brain; and it was this pressure we thought caused the death. It was the pressure of the blood on the medulla, the lower part of the brain, that caused the death.''

Dr. Jenkinsen gave similar testimony, and said further:

''I could see where the muscles of the left temple had been torn across by some blunt instrument. He had several deep bruises on his head besides this,—rather, had a concussion on the left side. He had one very deep bruise on the back of his head, and several on the forehead, and one just below the left eye. After lifting up the brain, we found a hemorrhage in the lower part of the brain, at what we call the medulla. This hemorrhage extended down into the vertebral column for some

little distance.  The immediate cause of death was the hemorrhage in the vicinity of the medulla.''

It seems quite improbable that these wounds were or could have been made with defendant's fists.  The trial court submitted to the jury the included offenses: assault with intent to commit murder, assault with intent to commit manslaughter, assault with intent to do great bodily injury, assault and battery, and simple assault.  But one error is assigned and argued, and that is whether the court erred in submitting these lower offenses or degrees of offense.  No complaint is made as to the correctness of the instructions,—that is, as to the form.

It is appellant's contention that defendant was guilty of some degree of homicide or nothing.  It is thought that this is so because the party assaulted is dead.  It may be conceded that it is the general rule that, if a blow is unlawful and death results from the blow, a party may be convicted of at least manslaughter.  But this does not necessarily follow.  It depends on the evidence and circumstances of each case.  The books are full of cases where a party was charged with murder, and there was a death, and still there was a conviction of degrees below manslaughter,—even simple assault.  In the instant case, under the evidence before set out, it was a fair question for the jury whether the death resulted from the blow, or whether striking his head on the sidewalk was the proximate cause of the death.  Proximate cause is usually a question for the jury.  We think it was so here.  *State v. Wood,* 112 Iowa 411, 415, citing *State v. Jackson,* 103 Iowa 702, 710, and another case.  But even if it be conceded that the blow was the proximate cause of the death, and the court and the jury were more merciful to defendant than he deserved, this does not warrant his discharge entirely.  Suppose defendant had testified, as he does, in effect, that he intended to inflict upon the deceased a great bodily injury, but that he did not intend to kill him.  Upon what reasoning could it be said that he is not guilty, and should not be convicted of assault with intent to inflict a great bodily injury, even though the party assaulted is dead?  Clearly, had the indictment in this case been for assault with intent to inflict a great bodily injury, the evidence would sustain a conviction therefor.  The defendant testifies, and it is probably true, that he did not in-

tend to kill Livermore. *But he nowhere says that he did not intend to do just what he did do:* that is, to strike deceased several times with his fists with great force. Under his own evidence, he is guilty of assault with intent to inflict a great bodily injury; because the intent may be inferred from his acts, and such a striking is more than an ordinary battery,—at least, the jury could have so found. This, under the holding in *State v. Gillett,* 56 Iowa 459, constitutes assault with intent to inflict great bodily injury. See, also, *State v. Ockij,* 165 Iowa 237, 240. It was held in the *Gillett* case, too, that whether such was the intention of the defendant is a question for the jury. The gist of the offense, as held by us in numerous cases, is the intent. We said, in *State v. Malcolm,* 8 Iowa 413, 415:

"The intent with which the injury is inflicted, or attempted, is what constitutes the offense. This is the gist of the offense."

In *State v. Parker,* 66 Iowa 586, 589, we said:

"The intent with which the assault is committed relates to its character, and indicates its degree. It is discovered, not in the extent or nature of the violence, but in the *animus* of the perpetrator."

A party may be guilty of assault with intent to commit murder without even touching the party assaulted, as where he shoots a pistol at another, but misses his aim. So, too, a person may be guilty of assault with intent to inflict a great bodily injury, without any battery, as where a person throws a brick at another with great force, but misses the mark. *State v. Schumann,* 187 Iowa 1212, 1215.

The *result,* therefore, is not necessarily controlling. It may be important, in some cases, in establishing the intent; as, for instance, several hard blows with the fist would enable the jury to determine whether a defendant intended an ordinary battery or something more aggravated. We said, in *Cokely v. State,* 4 Iowa 477:

"A battery is only an aggravation of an assault; and when the assault is charged to have been made with a dangerous weapon, it is a still further aggravation; and where it is charged to have been made with intention to commit a great bodily injury, it is only an offense in a different degree. The assault is still the original offense, and the means—the intent—and the

extent to which it is carried—qualify only the aggravation of this original offense, to which additional punishment is often affixed by the statute."

An illustration is made of a person pushing another from a moving train, if death resulted (no intent to kill being required to constitute manslaughter), and it is said that in such a case the party would be guilty of manslaughter. It might be so. But the other circumstances might be such as to make it either more or less than manslaughter. For instance, if the train were going at a high speed on the side of a mountain several thousand feet above jagged rocks below, and a person pushes another from a train and he is killed, he might be guilty of murder. Death would be almost inevitable,—the natural result of the act. On the other hand, suppose the train is going five or six miles an hour, across a level grassy or sandy plain, and a person pushes another off, without any intent to kill, death not being likely, could it be said that he was necessarily guilty of murder or manslaughter because death. resulted? Suppose, in such a case, it was conceded that the assaulting party only intended to injure by breaking an arm, or the like, but the person assaulted, in falling, struck his head on a rock, and was killed. The accused might be found guilty of assault with intent to inflict a great bodily injury. In many cases, it is the act and the intention with which the act is done, rather than the result, which fix the crime or the degree of crime. In *State v. Clark*, 80 Iowa 517, 519, in passing upon the sufficiency of an indictment, the court said: "The injury may have been greater than was intended."

In a few jurisdictions, the doctrine of merger obtains. In other words, the lower degrees are merged in the higher; and in such jurisdictions, for that reason there are no included offenses, and a conviction for a lower or included offense is not permitted. 31 Corpus Juris 867. That such is not the law in Iowa we shall see later.

The cases cited by appellant to sustain his proposition are where the defendant was convicted of a higher degree, and was himself complaining because the court did not submit the case to the jury on lower degrees of included offenses. In the instant case, had the trial court not instructed below manslaughter,

doubtless defendant would likewise be here contending that the court should have instructed as to assault with intent to inflict great bodily injury, and so on. Each case must depend upon its own facts. It is difficult sometimes for a trial court to determine just how far down the line of included offenses he should go. There are cases where a reversal is had because the court did not go far enough. The rule will be referred to later herein.

A rehearing was granted. The former opinion appears in 194 N. W. 353 (not officially reported). Appellant has cited additional authorities, and because of his insistence that his position is correct, it seems necessary to review the cases.

The first is *State v. Cole,* 63 Iowa 695. That was an indictment for murder in the first degree, wherein defendant was charged with murder by poison. Under the statute, Code Section 4728, murder by poison, lying in wait, etc., are made murder in the first degree. In the *Cole* case, it was not claimed that the defendant could have been found guilty of murder in the second degree, but it was contended that the trial court should have instructed as to manslaughter or assault with intent to commit murder, if defendant was guilty of negligence in administering the poison, which produced death, or administered it with intent to commit murder, and the death resulted from a different cause. The court held, however, that there was no evidence in the case on these last two propositions, and that, therefore, it was not error to instruct that defendant could be convicted of only first-degree murder. Defendant was convicted of that crime.

In a later case, however, *State v. Shepherd,* 129 Iowa 705, 708, and cases therein cited, it was said:

"Whatever may be said as to the proper course to be pursued in a case where murder is charged to have been committed by means of poison, we think it must be said, where the charge is murder by lying in wait or other willful, deliberate, or premeditated killing, the rule is that the case must go to the jury, to find the guilt of the defendant and the degree thereof, if murder, or of the included offenses, if less than murder. In other words, the law recognizes the possibility that in all such cases the offense may be less than murder, and that the jury should be privileged to so find."

The next case is *State v. Mahan*, 68 Iowa 304, 307. Defendant was charged with murder in the first degree and convicted of manslaughter. He appealed, claiming that the court erred in not instructing as to included offenses lower than manslaughter; and this court affirmed the judgment. What was the question for determination? Was it determined that the court erred by instructing as to included offenses below manslaughter, as claimed in the instant case? Clearly not. A holding that it was not error not to instruct below manslaughter is not authority for saying that it is error to instruct below manslaughter, even though it would not have been error to refuse to do so. We shall see later that the fact that the court or jury is more merciful to a defendant than he deserves is not a matter of which he can complain. It is in his favor. In the *Mahan* case, the trial court instructed that the jury could not convict the defendant of any offense lower than manslaughter, and that they should either convict him of murder or manslaughter, or acquit him. These instructions were thought to be error. This court said:

"It is certainly true that a number of offenses lower than manslaughter are included in the indictment, and under our statute, Code Section 4465, if the evidence failed to establish that defendant was guilty of either murder or manslaughter, but did show that he was guilty of one of the lower offenses included in the indictment, he might have been convicted of such lower offense. It was held in *State v. Vinsant*, 49 Iowa 241, and *State v. Peters*, 56 Iowa 263, that the district court erred in not instructing the jury as to the offenses lower than those charged in express terms in the indictments, which were included in the charges, and the judgments were reversed on that ground. The ruling in both cases is based on the ground, however, that, while under the evidence there might have been some doubt as to whether the defendant was guilty of the offense of which he was convicted, it tended strongly to show that he was guilty of one of the lower offenses, and hence that he had the right to have the jury pass on the question whether he was not guilty of such offense, rather than that of the higher one of which he was convicted. And whether it is necessary or proper for the court, in any case, to instruct the jury as to the offenses lower than that charged in express terms in the indictment, which are included

in it, must depend on the facts of the case, as they are shown by the evidence. If the evidence in a case should show beyond all question that the crime of murder had been committed, and the only controverted question of fact should be whether the accused was the guilty party, it certainly would not be proper for the court in that case to instruct the jury as to the offenses lower than murder. * * * It was admitted by the defendant that he had, by violence, inflicted on the person of Murphy a wound which caused his death, but his claim was, that his act in inflicting such injury was not unlawful [because he was acting in self-defense]. The question in controversy was as to whether he struck the fatal blow unlawfully, and, as it was conceded that death resulted in consequence of the blow, it would follow necessarily that, if the blow was unlawful, he was criminally responsible for the death which resulted from it. On the conceded facts, then, he was either criminally responsible for the death of Murphy, or he was not guilty of any crime."

In the *Vinsant* case, the defendant was charged with rape. The court instructed only on rape, and assault with intent to commit rape. The case was reversed because the evidence was such that defendant could have been convicted of simple assault. Cases might arise where such would not be the situation: as, for instance, where there was no touching of the person, but a pistol was pointed, and threats made. The *Peters* case was quite similar.

The *Mahan* case, supra, may readily be distinguished in its facts from the instant case. In that case, it was *conceded* that death resulted in consequence of the blow, and that, if the blow was unlawful because defendant was not acting in self-defense, the jury might find him guilty of manslaughter. And of course, if there was no evidence to sustain anything below manslaughter, it would not have been error to fail to instruct as to lower degrees. Neither would it in the instant case, had the court stopped at manslaughter, were the record the same as in the *Mahan* case. In the instant case, as well as in the *Mahan* case, the defense was self-defense; but the jury in both cases found against the defendant. Self-defense was as available to defendant on the charge of assault and battery or assault with intent to inflict great bodily injury as it was on the charge of man-

slaughter. We have seen, from the evidence set out, that, in the instant case, it was not conceded that the blow was the cause of the death. On the contrary, there was a fair chance for the jury to find that the death was not caused by the blow, but from another cause.

The next case cited is *State v. Cater,* 100 Iowa 501, where the charge was murder. The court held that, under the evidence in that case, it was manifest that, if the defendant was guilty, it was of murder in the first degree, and that it was not error not to instruct as to second degree or other included offenses, as the defendant contended should have been done. It is not a holding that, had the court instructed as to second degree, it would have been error. That is appellant's contention herein. The *Cater* case cites the *Cole* case; also *State v. Froelick,* 70 Iowa 213; *State v. Casford,* 76 Iowa 330; *State v. Munchrath,* 78 Iowa 268; *State v. Perigo,* 80 Iowa 37; *State v. Sterrett,* 80 Iowa 609; *State v. Sigg,* 86 Iowa 746. These cases are so similar to those we have attempted to analyze that it seems unnecessary to go into the details of each case, though it may not be out of place to refer to some of them.

In the *Froelick* case, complaint was made that the court refused to instruct below manslaughter, where the charge was murder. The court referred to *State v. Parker,* 66 Iowa 586, where there was an indictment for murder of a child by assaulting it, and failure to furnish medical care, and said that it was held in that case that defendant was properly convicted of an assault with intent to commit a great bodily injury, because the crime charged necessarily included an assault; but that the rule in that case was based upon the thought that the jury might have found that *death resulted,* not from the assaults and treatment by defendant, but from disease. No such facts appearing in the *Froelick* case, the court followed the *Cole* case, because of the evidence. In the *Froelick* case, there was nothing to sustain a charge below manslaughter.

In the *Munchrath* case, the court said that murder was clearly proved, and not denied; that manslaughter was the lowest degree charged in the indictment of which defendant could have been convicted, under the evidence. It follows the *Cole* case.

In the *Perigo* case, the court said there was no evidence whatever as to any offense lower than manslaughter, and that the trial court did not err, as defendant contended, in refusing to instruct below manslaughter.

So it was in the *Sterrett* case, where it was conceded all through the trial that deceased was killed by the discharge of defendant's pistol. The decision follows the *Cole* case, the court quoting therefrom:

"No rule is better settled than that an instruction should not be given upon a theory to which the evidence affords no support whatever. The question as to whether there is any evidence upon a given point is always a question for the court."

Rape was charged in the *Sigg* case, and the court instructed down to assault and battery; and defendant contended that the court should have instructed as to simple assault. Under the evidence, the court held that it was not error to refuse to so instruct, citing the *Cole* case and the *Perigo* case.

In some of these cases, the holding was that, because of the form of the indictment,—say in a rape case,—a party could be convicted only of the higher offense. In *State v. Desmond,* 109 Iowa 72, and other like cases, the defendant was charged with rape, and it was held that whether he could be convicted of assault and battery, or other included offenses, depended upon the form of the indictment. See, also, *State v. Ockij,* 165 Iowa 237, 245; 1 Bishop's New Criminal Law (8th Ed.), Section 780. The allegations of the indictment must be such as to cover the included offense. If it does not, then there may not be a conviction thereof, even though the evidence shows that it was included.

The indictment in the instant case necessarily charges an assault with the fists, and includes the crime for which defendant was convicted. It has been held that an indictment charging murder by striking, beating, bruising, or wounding with a stick, sufficiently charges the offense of aggravated assault and battery, under a statute making the assault aggravated where serious bodily injury is inflicted upon the person assaulted. *Bean v. State,* 25 Tex. App. 346 (8 S. W. 278). And see further cases in note to *Watson v. State,* 21 L. R. A. (N. S.) 1, 12. In the instant case, it would be impossible to charge murder,

under the circumstances here shown, without charging the. included degrees of assault. *State v. Parker,* 66 Iowa 586,. 589. The indictment was not in any manner attacked, and it is conceded that it is sufficient. No point is made by appellant that assault with intent to inflict great bodily injury, so far as the form of the indictment is concerned, is not included in this indictment.

We think it proper to refer to some of our later cases on this subject. In *State v. Dimmitt,* 184 Iowa 870, 871, we said:

"It is only where the court may hold, as a matter of law, that, if any wrong was done, the highest offense charged was committed, that included offenses need. not be submitted. In other words, the exclusion of an included offense is, in a sense, a direction for defendant; wherefore, it is proper to exclude the offense only if it be proper to direct a verdict of acquittal, were defendant charged with the higher offense alone. If there is room for reasonable difference of opinion whether the highest offense charged was committed, the defendant cannot make the point that it was error to convict him of the lower."

With reference to that case, we may add, in passing, that it would seem clear that if, from the evidence, there is a reasonable difference of opinion as to whether a defendant is guilty of the higher degree or of the lower degree, it is proper for the trial court to submit both.

In *State v. Brooks,* 181 Iowa 874, 879, 881, many of our cases are referred to, as to when it is and is not error to instruct as to lower included offenses. That was a rape case, where the court instructed as to rape and assault with intent to commit rape, but did not instruct as to assault and battery and simple assault; and the case was reversed because the lower degrees should have been submitted. The opinion states that there is some confusion in the cases on this point, but that there is no question as to the general rule; that a multitude of decisions hold that included offenses need not be submitted when the court may hold, as a matter of law, that, if any wrong was done, the highest offense charged was committed; that "it has been held that included offenses need not be submitted where (1) the evidence 'shows beyond question' that defendant was guilty of the major offense, if guilty at all; (2) where the evidence so

clearly shows the major offense was committed as that no other conclusion can be reached on the evidence; (3) if there be no evidence on which the finding of a lower offense may properly rest, and the jury could not convict of such lower offense on the evidence; (4) if there be no room to claim that assault and battery should be submitted; (5) if there is no evidence of an included offense charged. * * * On the other hand, included offenses should be submitted if (1) there is *any* evidence of their commission; (2) if, under the evidence, 'the jury might believe the defendant guilty' thereof; (3) if there be *some* evidence from which a jury may believe the included offense only was committed.''

In that case, in support of the proposition that it is not improper to instruct on the lower degrees, and that the trial court erred in stopping the consideration of the jury at assault with intent to rape, the following cases are cited: *State v. Vinsant,* supra; *State v. Mitchell,* 68 Iowa 116; *State v. Barkley,* 129 Iowa 484, 486; *State v. Harrison,* 167 Iowa 334, 336; *State v. Trusty,* 118 Iowa 498; *State v. Blackburn,* 136 Iowa 743.

Referring again to the question of merger, it is said in 31 Corpus Juris 867, supra:

''Where the doctrine of merger obtains, on a trial of an indictment for murder, there can be no conviction of an assault and battery, or of an assault, such offenses being misdemeanors.''

See, also, *Reed v. State,* 141 Ind. 116 (40 N. E. 525); *Gillespie v. State,* 9 Ind. 380; *Wright v. State,* 5 Ind. 527.

''By statute in some states, the jury are not entitled to find defendant guilty of a less degree than established by the evidence. Thus, some statutes forbid a conviction of an assault with intent to commit an offense, or of an attempt, on proof that the offense was actually perpetrated.'' 31 Corpus Juris 870, 871, notes 23 and 24.

It is also said, in 31 Corpus Juris 866, that, upon the question of whether there may be a conviction under an indictment for homicide, of an offense which does not involve a homicide, there is some conflict of authority, and also:

''That there may be such a conviction is supported by the weight of authority in those jurisdictions in which the common-

law rule preventing a conviction for a misdemeanor upon a charge of felony is not recognized.''

The doctrine of merger does not obtain in Iowa. Cases already cited and to be cited conclusively show that, in a proper case, one may, in Iowa, be convicted of an included offense. The statute itself so provides. Code Section 5407. In this state, on an indictment by the grand jury, a defendant may be convicted of a lower degree of offense, as a misdemeanor, where an indictment would not lie in the first instance. *State v. Jarvis,* 21 Iowa 44; *State v. Shepard,* 10 Iowa 126; *Dixon v. State,* 3 Iowa 416; 16 Corpus Juris 182. It is thus seen that the common-law rule that there can be no conviction for misdemeanor on an indictment for felony does not prevail in this state. Furthermore, the crime of assault with intent to inflict a great bodily injury may be punished by imprisonment in the penitentiary, and is, therefore, a felony. Code Section 4771, as amended, and now appearing in the Code Supplement of 1913. It was a felony at the time of the transaction involved herein. It was not a felony, however, at the time of the decision in the case of *State v. Parker,* 66 Iowa 586; yet a conviction therefor was sustained. In the *Parker* case, defendant was indicted for murder in the first degree, and was convicted of an assault with intent to do a great bodily injury. It was there claimed by the defendant, as it is in the instant case, that such a conviction is unauthorized by law. The case is directly in point, because therein the precise question was raised and determined. We there said:

"It is urged by counsel for defendant that the verdict of guilty of an assault with an intent to commit a great bodily injury, upon the indictment for murder, is unauthorized by law. Code Section 4466 [now Section 5407] provides that 'the defendant may be found guilty of an offense the commission of which is necessarily included in that with which he is charged in the indictment.' It cannot be doubted that an assault is included in the crime of murder. Usually, an indictment in express words charges an assault with felonious intent. Of necessity, an assault must have been literally committed, in all cases of murder, by direct violence. The intent with which the assault is committed relates to its character, and indicates its degree. It is discovered, not in the extent or nature of the violence, but

in the animus of the perpetrator. It follows that an assault, whether with an intent to murder, to maim, or to inflict a great bodily injury, is included in the crime of murder. It is the settled doctrine of the law in this state that an assault is included in the crime of murder; the intent with which the assault is committed does not exclude it. This case illustrates the reasonableness of the rule we recognize. The indictment alleges assault upon the deceased, who was a child, the failure and refusal of defendant to furnish him with medical treatment and care, and the compelling of the child to work while wounded and bruised. Now, if the jury found that death resulted, not from the assaults and treatment received from defendant, but from disease, and also found that defendant did assault the child with an intent to inflict a great bodily injury, their verdict is authorized by the law, the assault being included in the charge of murder."

In that case, as in this, the party assaulted was dead.

Other cases in line with the *Parker* case, supra, are *State v. Akin*, 94 Iowa 50; *Watson v. State*, supra; *Territory v. Dooley*, 4 Mont. 295; *Bush v. Commonwealth*, 78 Ky. 268; *People v. McDonnell*, 92 N. Y. 657; *Davis v. State*, 45 Ark. 464; *State v. Burk*, 89 Mo. 635; *People v. Warner*, 53 Mich. 78; *People v. Adams*, 52 Mich. 24; *Powers v. State*, 87 Ind. 144; *Bryant v. State*, 41 Ark. 359; *State v. O'Kane*, 23 Kan. 244; *People v. Fine*, 53 Cal. 263; *Wilson v. State*, 53 Ga. 205; *Bean v. State*, supra. See, also, 31 Corpus Juris 854, 861, 862; 1 Bishop's New Criminal Law (8th Ed.), Section 780, and notes, where some of the foregoing cases are cited, and the text states that the doctrine is elementary, and that, in a charge of felonious homicide "committed by an assault and a beating, there may be a gradation of offenses, the particulars of which will somewhat vary with the laws of the state in which it is committed. The lowest offense will be assault, the next above it will be battery, the next will sometimes be assault with a dangerous weapon, the next assault with a dangerous weapon with intent to kill, the next manslaughter, the next murder, and the last, murder in the first degree. Each one of these, except the last, will be a less crime included in the greater."

This doctrine is very elementary, and the authorities to it are not discordant.

In *Mapula v. Territory,* 9 Ariz. 199 (80 Pac. 389), it was held that, where an aggravated assault is committed, when serious bodily injury is inflicted upon the person assaulted, an indictment for murder alleging that the defendant inflicted certain mortal injuries justifies a conviction for aggravated assault.

In the instant case, even if the blow was not the proximate cause of the death, or there were intervening causes (29 Corpus Juris 1150), or if the defendant was in fact guilty of manslaughter, and the instructions of the court permitted, and the jury mercifully found him guilty of a lower crime, he may not complain. *State v. Dimmitt,* 184 Iowa 870, 872; *State v. Brooks,* 181 Iowa 874; *State v. Shepherd,* 129 Iowa 705; *State v. Ensley,* 10 Iowa 149, 150; *State v. Parker,* supra; *State v. Haugh,* 156 Iowa 639; *State v. Barkley,* 129 Iowa 484; 17 Corpus Juris 361, Section 3732, and many cases cited thereunder; also, *State v. Williams,* 197 Iowa 813. To sustain appellant's contention would necessarily overrule all the Iowa cases just cited, even on his own theory of the case. Since, in the instant case, the blow was with the fist, rather than with a weapon, and the evidence of the defendant himself is that he intended to strike the blows, but did not intend to kill, it was peculiarly appropriate that the court should instruct on all the included lower degrees.

It is asserted that the legal effect of the verdict in this case was to sustain the plea of self-defense. This must be on the theory that, because Livermore was dead, and assault with intent to inflict great bodily injury is not included in the indictment, therefore an acquittal of manslaughter is a finding that the jury acquitted of manslaughter because of self-defense,—an implied acquittal. We have seen that the crime for which defendant was found guilty is included in the indictment, and that the trial court properly instructed on the lower degree. The defendant did not and could not claim that he was defending himself against the result,—that is, the death of deceased. He did claim—and that is all he could claim—that he was defending himself, as he says, from blows from the deceased. He says he was defending himself against what the deceased did. The right of self-defense was just as available to the defendant on a charge of assault with intent to inflict a great bodily injury, as where the charge was murder. The fact that Livermore was dead, and

the acquittal of defendant of manslaughter, in no manner constitute a finding by the jury that he was acting in self-defense. The jury necessarily found, before they could convict the defendant of anything, that he was not properly acting in self-defense. If appellant's contention is correct, that assault with intent to inflict great bodily injury is not included in the charge of murder or manslaughter, then a defendant might, in some cases, be put upon trial a second time, and thus be put in jeopardy a second time. Suppose the trial court had not instructed below manslaughter, and defendant was acquitted of manslaughter, and thereafter defendant should be indicted for assault with intent to inflict great bodily injury, or charged with assault and battery, on the theory that the death was not the result of the blow, but of an independent cause. If it is included, this would bar a second prosecution, even though the trial court had erroneously refused to instruct below manslaughter, and there was an acquittal of manslaughter.

The statute, Code Section 5340, provides:

"When a defendant has been convicted or acquitted upon an indictment for an offense consisting of different degrees, the conviction or acquittal shall be a bar to another indictment for the offense charged in the former or for any lower degree of that offense, or for an offense necessarily included therein."

It would seem quite clear that, in the case supposed, defendant could not be again put in jeopardy for assault with intent to inflict great bodily injury, and this because the evidence was such that, under the statute, the crime for which he was convicted is included in the charge made in the indictment. To sustain a plea of former jeopardy, the term "same offense" does not signify the same offense *eo nomine*, but the same criminal act, transaction, or omission. *Williams v. State,* 58 Tex. Cr. 193 (125 S. W. 42). It seems to be the "accepted doctrine that an acquittal or a conviction for a minor offense included in a greater will bar a prosecution for the greater, if, on an indictment for the greater, defendant should be convicted of the lesser." 16 Corpus Juris 271; *State v. Sampson,* 157 Iowa 257 (42 L. R. A. [N. S.] 967) ; *State v. Gleason,* 56 Iowa 203; *State v. Foster,* 33 Iowa 525. There may be some exceptions to this, not involved in this case.

We have seen that there was evidence from which the jury may have found that the cause of the death was the falling of deceased on the sidewalk. Even if this is not so, defendant may not complain because the instructions and the verdict are more favorable than he is entitled to.

We reach the conclusion that on no theory advanced by the defendant can his contention be sustained.

The judgment is—*Affirmed*.

ARTHUR, C. J., EVANS, STEVENS, and FAVILLE, JJ., concur.

DE GRAFF and VERMILION, JJ., dissent.

DE GRAFF, J. (dissenting.) The record shows without dispute that one Glenn Livermore engaged in a fistic encounter with the defendant Claude Shaver, and that the defendant executed a blow with his fist that proximately resulted in the death of Livermore. The defendant was indicted for murder, and upon the trial interposed a plea of self-defense. He was convicted of assault to do great bodily injury.

It appears that, on the forenoon of August 7, 1922, Livermore, without apparent reason, committed a trespass against the defendant by throwing bricks through the window of the defendant's home, cutting the window screens, breaking down the fence around the inclosure, and, after securing ingress through one of the broken windows, wrecked the furniture in the home. About 3 o'clock on the afternoon of the same day, the defendant was informed of the commission of the trespass, and was further told that Livermore had a gun, and was looking for him. Shaver returned home, and proceeded to repair the damage, and, while in the act of rebuilding the fence, Livermore and his wife walked past, on their way to a store, for the purpose of purchasing some cigarettes. On their return, they walked on the same side of the street on which the Shaver home is located; and as they passed the house, some words were exchanged, and an altercation took place, resulting in a fist fight, in which Livermore was knocked down by the defendant, his head striking the sidewalk, causing his death a few minutes thereafter.

But one error is assigned, and but one proposition is sub-

mitted on this appeal: Did the trial court err in submitting to the jury, *under the circumstances of this case,* the included offenses, to wit: (1) Assault with intent to commit murder; (2) assault with intent to commit manslaughter; (3) assault with intent to do great bodily injury; (4) assault and battery; (5) simple assault?

Under the instant record, the trial court would have been clearly justified in withdrawing from the consideration of the jury the crime of murder as charged, and also the included offense of assault with intent to commit murder. This should have been done; but with this phase of the case we are not concerned.

At the very threshold of this opinion, the question naturally arises: What relation, if any, have the provisions of our statute to the point in issue? Code Section 5406 provides that:

"Upon an indictment for an offense consisting of different degrees, the jury may find the defendant not guilty of the degree charged in the indictment, and guilty of any degree inferior thereto, or of an attempt to commit the offense, if punishable by indictment."

Code Section 5407 provides that:

"In all other cases, the defendant may be found guilty of any offense the commission of which is necessarily included in that with which he is charged in the indictment."

Under the circumstances of the instant case, do these provisions govern or furnish a deciding principle? We answer, "No." The reason is that, if the evidence, as in the case at bar, shows that the defendant is either guilty of the crime charged or of a crime not *a mere degree* of the higher offense, the quoted statutes find no application. We have frequently so held, and it is a sensible rule, to which we should adhere. The principle is expressly affirmed in *State v. Sterrett,* 80 Iowa 609, in which it is said: "The defendant is either guilty of manslaughter or not guilty of any crime." Manslaughter is a substantive crime, and not *a mere degree* of murder. In the case at bar, the evidence warranted the submission of the crime of manslaughter, and none other.

Manslaughter is not defined by statute. The definition accepted in this state for fifty years is that it is the unlawful

killing of another without malice, express or implied, either unlawfully, upon sudden quarrel and upon reasonable provocation, but without legal excuse, or unintentionally, while the slayer is in the commission of an unlawful act not amounting to a felony. *State v. Abarr*, 39 Iowa 185; *State v. Walker*, 133 Iowa 489. It is essentially a crime of result, not intent. It is the fact that death results from an unlawful act that constitutes manslaughter.

If the defendant was engaged in the commission of an unlawful act, as the jury, by the verdict of guilty of an assault with intent to inflict a great bodily injury, found, and death resulted from that act, the fatal result made his crime not less than manslaughter. If his act was unlawful and was not justifiable on the ground of self-defense, he is answerable for the fatal result, no matter whether his intent was to commit a mere battery or a more serious injury. The only thing that would relieve him from criminal responsibility for the resulting death would be a failure to find that his act was unlawful. If his act was not unlawful, he committed no crime.

There is no doubt of the propriety and necessity of instructing on offenses lower than manslaughter where there is a question whether death resulted, not from the act of the defendant, but from some intervening cause. That, however, was not the situation in this case. Whether it is necessary or proper for a trial court in any case to instruct the jury as to offenses included within the major crime charged in the indictment depends upon the facts in evidence. *State v. Mahan*, 68 Iowa 304. No rule is better settled than that an instruction should not be given upon a theory to which the evidence affords no support whatever. *State v. Cole*, 63 Iowa 695. We recognize that there are cases in which the jury should be privileged to find the defendant guilty of an included offense, although the evidence might support a verdict for a higher offense and we would not be justified in disturbing the finding of a lower degree, or of an included offense. In such cases it may be said that the jury dealt too leniently with him, but of this it does not lie in the mouth of the defendant to complain. *State v. Dimmitt*, 184 Iowa 870. The point we emphasize is that the case at bar is not such a case. The parties to the fight were in mutual combat when the mortal blow was given. It constituted a homicide. Every homicide is

either felonious or nonfelonious. If felonious, it constitutes
either murder or manslaughter. Livermore was killed. He was
killed by the defendant. This much is admitted, and must be
conceded. Livermore's death was not accidental. No inde-
pendent or intervening cause of death is shown, nor is such in-
timated in the evidence or contemplated by the court's instruc-
tions. The defendant admittedly struck the fatal blow. It was
intentionally done, and the gist of the offense is whether the
blow constituted an unlawful assault. The defendant, there-
fore, is guilty of a homicide; and if the assault was unlawful,
he is criminally guilty, and the offense is at least manslaughter.
This charge was properly submitted to the jury, and the jury
by its finding said he was not guilty, and consequently was not
guilty of an unlawful assault. The defendant pleaded self-
defense, and it was the only theory upon which the jury could
have acquitted him of manslaughter. Having acquitted him of
the only offense which the evidence warranted a submission, he
is exempt from all criminal liability, and must be deemed to be
innocent and guiltless of any crime. The plea of self-defense
does not traverse the averments of doing the act charged, but
confesses and seeks to justify the act as lawful. The plea of
self-defense is consistent with an intent to do great bodily in-
jury. The plea excuses, rather than fixes the degree of homi-
cide, and if established, entitles the accused to a full acquittal.
*State v. Castello*, 62 Iowa 404. We repeat that, under the evi-
dence in this case, there was no warrant for the submission of
any crime except manslaughter.

In *State v. Parker*, 66 Iowa 586, the indictment charged
murder. The evidence warranted a finding that the deceased
was assaulted, but that the death was caused by disease,—an
independent cause,—and the jury so found. However, since the
evidence disclosed an assault which had no relation to the death,
a verdict of assault to do bodily injury was returned. The
*Parker* case is clearly distinguishable in principle, and also on
the facts, from the instant case. The opinion reads:

"Now, if the jury found that the death resulted, not from
the assaults and treatment received from defendant, but from
disease, and also found that defendant did assault the child with

an intent to inflict a great bodily injury, their verdict is author-
ized by the law.''

In the case of *State v. Cody,* 94 Iowa 169, there was a con-
viction for simple assault, on an indictment for assault to do
great bodily injury. The evidence clearly shows an assault was
committed, and under such circumstances, it was for the jury
to determine the grade or degree of assault. This case furnishes
no precedent contrary to the conclusion on the facts in the case
at bar. Upon only one assumption can the *Parker* case be said
to have any bearing in the instant case, and that is to predicate
the homicide on a cause independent of the blows given by the
defendant Shaver. The evidence does not warrant such an as-
sumption. The blow was the producing cause.

It is suggested by counsel for the State that, had the court
failed to instruct on the included offenses, and the jury had
found the defendant guilty of manslaughter, he would now be
contending in this court that the included offenses should have
been submitted. This suggestion has no legal value. Had the
jury convicted him of manslaughter, the only question would
involve the sufficiency of the evidence to sustain the verdict.
*State v. Munchrath,* 78 Iowa 268.

I would reverse.

VERMILION, J., concurs in this dissent.